Lenard E. Schwartzer
Nevada Bar No. 0399
Emelia L. Allen
Nevada Bar No. 11898
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Telephone: (702) 228-7590
Facsimile: (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Attorneys for Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No. BK-S-11-10202-MKN |
|---|---|
| **BESO LLC**, | Chapter 11 |
| Debtor. | **DEBTOR'S EMERGENCY MOTION FOR APPROVAL OF MANAGEMENT AGREEMENT *NUNC PRO TUNC*; REQUEST FOR INTERIM RELIEF RE FINANCING** |
| | Date: OST Requested<br>Time: OST Requested |

Beso LLC (the "Debtor" or "Beso"), by and through its counsel, hereby files this Debtor's Emergency Motion for Approval Management Agreement with CHLN, Inc. (the "Motion"). This Motion is made and based upon 11 U.S.C. §363(b)(1) and §364(b), the Declaration of William M. Braden, the Points And Authorities set forth herein, the pleadings on file, judicial notice of the Debtor's Monthly Operating Reports, and any argument entertained at the hearing on the Motion. A copy of the Management Agreement is attached hereto as **Exhibit "A."** The Debtor is seeking approval of the Management Agreement as of Monday, August 8, 2011, the date the Debtor allowed CHLN, Inc. to take over daily management of the Beso Restaurant. The debtor is seeking an interim order allowing the post-petition financing on shortened time to avoid the closing of the Beso Restaurant. A copy of the proposed Interim Order is attached as **Exhibit "B."**

The key consideration is that the Debtor in this Chapter 11 case has been losing money in its operations and, without the immediate infusion of additional funds would be unable to continue

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

operation of its business. CHLN, Inc. (the "Manager"), a subsidiary of Landry's, Inc., is ready, willing and able to take over the daily management function of the Beso Restaurant and loan the funds necessary to pay the current operating expenses of the Beso Restaurant. The loan would be an unsecured loan with administrative priority. The Manager, or an affiliate of the Manager, intends to make an offer to buy Beso's assets for $1,000,000 plus the amount of any funds it loans under the Management Agreement. Without the ability to borrow money for operations, the Debtor is unable to continue its business operations and would ask the Court to convert the case to a case under Chapter 7.

## FACTS IMPORTANT TO CONSIDERATION OF THE MOTION

1.     Debtor filed for relief under Chapter 11 of the Bankruptcy Code pursuant to 11 U.S.C. §§ 1107(a) and 1108 on January 6, 2011 (the "Petition Date") and remains a debtor in possession.

2.     Debtor operates the Beso Restaurant business and manages its financial affairs as Debtor-in-Possession. As shown by the monthly operating reports on file, the Debtor's business has operated at a loss.[1]

3.     Debtor has previously terminated daily operation of the Eve Nightclub to reduce its losses. Debtor has reached the point where it would have to cease operation of the Beso Restaurant in order to avoid incurring post-petition debt to employees and vendors it could not pay. The Debtor determined that putting the Management Agreement into effect on Monday, August 8, 2011 was the only viable alternative to ceasing operation of the Beso Restaurant.

4.     The June Monthly Operating Report states that the accumulated loss from operations since filing on January 6, 2011was $669,350. The total funds on hand at the end of June, 2011 was $107,697. The post-petition rent due to the Debtor's landlord, Crystals at

---

[1] *See* Monthly Operating Reports for January through June, 2011. Docket Nos. 46, 78, 99, 147, 148 and 156. Courts can take judicial notice of documents in their own records. Fed.R.Evid. 201(b)(2); *In re Dessources*, 430 B.R. 330, 331 (Bankr.D.Mass. 2010)(footnote 1) ("I may take judicial notice of the documents in the Debtor's file and those in the Court's own records in other, but interrelated, proceedings."); *In re KJK Const. Co., Inc.*, 414 B.R. 416, 430 (Bankr.N.D.Ill. 2009) ("This Court's own records are the proper subject of judicial notice.").

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Debtor's Motion to Approve Management Agreement

CityCenter, LLC ("Crystals"), through July, 2011, is in excess of $276,000. The Debtor's lease with its landlord has been deemed rejected by virtue of the Debtor not assuming or rejecting said lease within the first 120 days of this case. See, 11 USC section 365(d)(4). The Debtor's remaining assets- inventory, furniture and equipment[2], and preference actions are not likely to be sufficient to pay all administrative expenses.

     5.    The proposed Manager has offered to (a) take over the management duties of operating the Beso Restaurant and (b) fund the operation of the Beso Restaurant. The Debtor will retain the right to manage the Chapter 11 case and will retain the right to accept higher and better offers for the Debtor's assets. The funds loaned by the Manager will have administrative priority (but not super-priority) for repayment and will *not* be secured by assets of the estate. The terms of the loan by the manager are as follows:

| | |
|---|---|
| Amount: | Not specified. Manager is authorized to use its own funds, as may be necessary, in addition to the assets and property of the Debtor, to fund any deficiencies in operating expenses for the Business. Management Agreement ¶ 7. |
| Limits: | None. |
| Use of Proceeds: | Operating expenses for the Beso Restaurant. |
| Interest Rate: | None. |
| Fees: | None. |
| Priority | Administrative priority under Bankruptcy Code §503(b)(1). |
| Security: | None. |
| Termination: | Breach by Manager. Management Agreement ¶8.a.<br>Conversion to Chapter 7, Appointment of trustee or examiner, Order lifting stay, filing of Plan without Manager's consent. Management Agreement ¶8.b.<br>Termination for no cause. Management Agreement ¶8.c |

---

[2] Crystals asserts on lien on furniture and equipment which is provided in the Lease and is likely to be deemed perfected because of a UCC-1 filing with the Secretary of State.

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

| | |
|---|---|
| Carve-outs: | None. |
| Surcharge: | None. |
| Modification of Stay: | None. |
| Adequate Protection: | None |
| Indemnity: | None. |
| Conditions Precedent: | Bankruptcy Court approval *nunc pro tunc*. |
| Prior Loans: | None from Landry's or its affiliates. |

6. The Debtor's current manager has concluded that entering this Management Agreement is in the best interests of the Debtor's bankruptcy estate and its creditors and, in fact, is the only alternative to termination of operations and conversion of this case to a case under Chapter 7.

7. The proposed Manager is an affiliate of Landry's, Inc. Landry's is a national, diversified restaurant, hospitality and entertainment company principally engaged in the ownership and operation of high end and casual dining restaurants, primarily under the names of Rainforest Cafe, Saltgrass Steak House, Landry's Seafood House, Claim Jumper, Bubba Gump Shrimp Co. and The Chart House as well as the Signature Series: Vic & Anthony's, Brenner's Steakhouse, Grotto, LaGriglia, Pesce, Willie G's and Oceanaire. The Company is also engaged in the ownership and operation of hospitality businesses, including the Golden Nugget Hotel & Casinos in Las Vegas and Laughlin, Nevada, the Kemah Boardwalk, the San Luis Resort, Inn at the Ball Park and the Downtown Aquarium in Denver and Houston. Based upon this information, the Debtor believes that the Manager will be competent to operate the Beso Restaurant.

8. The Debtor believes that the proposed sale of the Debtor's business to the Manager or its designee for $1,000,000 plus the amount of any funds the Manager loans under the Management Agreement is in the best interests of the Debtor's bankruptcy estate and its creditors and the Debtor will propose such a sale. Under the Management Agreement, the Debtor has agreed to propose to sell its assets to the Manager or its designee in a private sale transaction, subject to Court approval.

/ / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

4

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

## Memorandum of Law

### Contract for Management Services and Contract for Post-Petition Loan Require Court Approval

11 U.S.C. §363(b)(1) provides:

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...

11 U.S.C. §364(b) provides:

(b) The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

By their terms, §363(b)(1) and §364(b) of the Bankruptcy Code requires a debtor in possession to obtain Court approval, after notice and hearing, of a contract "other than in the ordinary course of business" and for obtaining unsecured debt other than in the ordinary course of business.[3] A business justification must be shown to support a debtor's using, selling or leasing property out of the ordinary course of business. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070–1071 (2d Cir.1983); *In re Texaco Inc.,* 81 B.R. 813, 817 (Bankr.S.D.N.Y. 1988). As stated in *In re ASARCO LLC,* 441 B.R. 813, 823 (S.D.Tex. 2010):

> Approval of § 363(b) transactions requires that the bankruptcy court find that the debtor "justify[ ] the proposed transaction. That is, for the debtor-in-possession ... to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc.* ( *In re Continental Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir.1986) (citing *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d Cir.1983)).

There can be no dispute that the Debtor has incurred continuing loss from operations.  The June Monthly Operating Report states that the accumulated loss from operations since filing on January 6, 2011was $669,350.  The total funds on hand at the end of June, 2011 was $107,697.

---

[3] The debtor in possession may obtain unsecured debt in the ordinary course of business without prior Court approval.  Bankruptcy Code §364(a).

1   The Debtor had an unpaid obligation to pay post-petition rent. Bankruptcy Code §365(d)(3). The

2   post-petition rent due to Crystals, through July, 2011, is in excess of $276,000.  This obligation is

3   an administrative expense. *In re Pacific-Atlantic Trading Co.*, 27 F.3d 401 (9th Cir. 1994). The

4   bankruptcy estate may be administratively insolvent. The Debtor's management has reached the

5   conclusion that (a) new management must be employed[4] and (b) continued operation of the Beso

6   Restaurant without an infusion of funds is not financially feasible.[5]

7       Approval of a loan "other than in the ordinary course of business" must be based upon a

8   factual showing that the loan preserves the Debtor's bankruptcy estate.  As stated in *In re Club*

9   *Development & Management Corp.*, 27 B.R. 610, 611-2 (9th Cir.BAP 1982):

10        The standards for authorizing a trustee to incur debt under section 364(b) so
    that it is allowable as an expense of administration under section 503(b)(1) are

11  found in the latter section. Other than certain taxes and tax-related debt, 11 U.S.C.
    § 503(b)(1)(B), (C), only the "actual, necessary costs and expenses of preserving

12  the estate" are allowable as administrative expenses. 11 U.S.C. § 503(b)(1)(A). An
    order granted pursuant to section 364(b) must be supported by such a finding. B.R.

13  752(a).

14

15      In this case, the proposed funding by the proposed Manager will be used to pay employees

16  and vendors in the ordinary course of operating the Beso Restaurant pending sale or reorganization

17  of the Debtor's business. The current manager of the manager of the Debtor believes that no other

18  lender would make this loan in the present circumstances. The one additional requirement is that

19  in the event of a sale of the Debtor's business to a third party, the Manager will be repaid, at

20  closing, its accrued administrative claim for all operating losses and all expenses incurred by

21  Manager hereunder, if any. *See* Management Agreement ¶ 6.

22  / / /

23  / / /

24  _____

25  [4] Current management has not been able to increase revenue or cut costs sufficiently to make the

26  Beso Restaurant profitable enough to pay all the expenses of the Debtor's bankruptcy estate.

27  [5] The current manager of Beso, LLC would assert it is not proper to continue employing
    employees and buying supplies from vendors if he is not sure that these employees and vendors

28  can be paid.

Debtor's Motion to Approve Management Agreement

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

**APPROVAL *NUNC PRO TUNC***

Approval of the Management Agreement with its post-petition loan *nunc pro tunc* is permitted if the Court is presented with justification

> At this point in the analysis, some courts consider, pursuant to Section 105(a), whether the extensions of credit that are ruled outside the ordinary course of business may yet be approved, for equitable considerations, on a *nunc pro tunc* basis so as to satisfy Section 364(b). That Code section provides that the court, after notice and a hearing, may authorize the trustee to obtain unsecured credit other than in the ordinary course of business and the resulting debt will be allowable as an administrative expense. 11 U.S.C. § 364(b) (2006).
>
> At the outset, extraordinary circumstances must be found to exist in order to authorize a loan on a *nunc pro tunc* basis. *In re Blessing Indus.,* 263 B.R. at 273 (citing *In re D.C., Inc.,* Bankr.No. 97–01860–W, slip op. at 2, 1997 WL 33384401 (Bankr.N.D.Iowa Dec. 19, 1997) (citing *Lavender v. Wood Law Firm,* 785 F.2d 247, 248 (8th Cir.1986)(construing bankruptcy statute requiring prior court approval for professional compensation))); *In re Lehigh Valley Professional Sports Clubs, Inc.,* 260 B.R. at 750 (citing *In re City Wide Press, Inc.,* 102 B.R. 431, 436 (Bankr.E.D.Pa.1989), *aff'd,* 110 B.R. 710 (E.D.Pa.1990)).
>
> In addition to a showing of extraordinary circumstances, creditors seeking *nunc pro tunc* approval of extensions of credit must show that approval would have been granted if a timely application had been made, that other creditors have not been harmed by the continuation of business made possible by the loans, and that the parties entered into the credit transaction in good faith and with the honest belief that the transactions were authorized without court approval. *In re Blessing Indus.,* 263 B.R. at 273 (citing *In re American Cooler Co.,* 125 F.2d 496 (2d Cir.1942)); *In re Lehigh Valley Professional Sports Clubs, Inc.,* 260 B.R. at 750–51 (citation omitted). *See also In re Husting Land & Dev., Inc.,* 255 B.R. 772, 783 (Bankr.D.Utah 2000) (stating court would only give retroactive approval of loan if debt would have been authorized after timely application) (citing *In re American Cooler Co.,* 125 F.2d at 497; *In re Massetti,* 95 B.R. 360 (Bankr.E.D.Pa.1989)).

*In re Living Hope Southwest Medical SVCS, LLC,* 2011 WL 887968 (Bankr.W.D.Ark., March 14, 2011).

In this case, the proposal from the Manager came at the same time as the current manager determined that there were insufficient funds for continued operation of the Beso Restauarant. The alternative to authorizing the Management Agreement without prior Court approval was the ceasing of operations.  The Management Agreement was finalized after the Court closed on Monday, August 8, 2011.  This Motion was filed the first business day after the agreement was signed. There was no delay in seeking approval of the Management Agreement.

/ / /

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Debtor's Motion to Approve Management Agreement

**INTERIM RELIEF**

The Bankruptcy Rules provide that this Court can provide interim relief regarding a motion for authority to obtain credit before 14 days to the extent necessary to avoid immediate and irreparable harm to the bankruptcy estate.  Bankruptcy Rule 4001(c)(2).  In this case, interim relief is appropriate to avoid the closure of the Beso Restaurant.

**CONCLUSION**

For the reasons stated above, this Court should approve the Management Agreement and order that the funds advanced by the Manager to pay operating expenses will be considered an administrative expense.

Dated this 9th day of August, 2011.

  /s/  Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146
*Attorneys for Debtor and Debtor in Possession*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Debtor's Motion to Approve Management Agreement

# EXHIBIT "A"

## MANAGEMENT AGREEMENT

**MANAGEMENT AGREEMENT** (this "Agreement") made as of August 5, 2011 by and between BESO LLC (the "Company"), a Nevada limited liability company with its principal place of business at 3720 S Las Vegas Boulevard, Las Vegas, Nevada and CHLN, INC. ("Manager"), a Delaware Corporation, with an address of 1510 West Loop South, Houston, Texas 77027.

**WHEREAS,** the Company is engaged in the business of operating a restaurant facility known as "Beso" located at 3720 S Las Vegas Boulevard, Las Vegas, Nevada (the "Business"); and

**WHEREAS,** on January 6, 2011, the Company filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") and was assigned Case Number 11-10202-MKN; and

**WHEREAS,** in light of the Debtor's current financial situation, the Debtor, in its business judgment, has determined that it is in the best interests of its creditors and estate to immediately enter into this Agreement and further to sell to the Manager or its designee substantially all of the Business and other related assets in a private sale transaction (the "Sale"); and

**WHEREAS,** the Company may not be properly able to sustain operations without outside management assistance from the Manager;

**WHEREAS,** the parties hereto desire to enter into this Agreement to provide for the engagement of the Manager by the Company to provide management services to the Company.

**NOW, THEREFORE,** in consideration of the premises and covenants set forth herein, and intending to be legally bound hereby, the parties hereto agree as follows:

1.    **Retention of the Manager; Services.**

        a.      The Company hereby retains the Manager to perform the management services described herein. The Manager agrees to provide such management services (the "Services") to the Company in accordance with this Agreement. Except as provided herein, Manager may do all such things as it believes in its reasonable judgment is prudent in connection with the operation of the Business.

        b.      The Manager shall be responsible for, among other things, the strategic, financial, operating, consultative and administrative obligations related to the operation of the Business. The Manager shall make commercially reasonable efforts to continue the Company's compliance with all local and state regulations relating to the Business. The Services shall include, but not be limited to using the Company assets to continue to operate the Business in the ordinary course of business, including operating to the general public, collection of all receipts on behalf of the Company, payment to vendors and employees, maintaining equipment and licenses, and all other acts reasonably required with respect to the operation of the Business. On the Effective Date (defined below), the Company shall provide the Manager access to all bank accounts for the orderly operation of the Business. Until this Agreement is approved by the Bankruptcy Court, the Company's current manager, William Braden, shall be the sole signatory on the accounts in which the Company's receipts are deposited. Subsequent to such approval, the Manager shall become the sole signatory on all bank accounts.

        c.      The parties agree that the effective date of this Agreement shall be the date Manager commences to provide the services hereunder, which shall commence on the date hereof (the "Effective Date").

Management Agreement 080511v4

1375168-2

d.      Unless otherwise terminated in accordance with the terms hereof or pursuant to an order of the Bankruptcy Court, on the Effective Date, the Manager shall have the sole control over the operations and assets of the Business.

2.      **Limitations on Manager's Authority.**

Without the prior consent of the Company and approval of the Bankruptcy Court on notice , the Manager shall have no authority to do any of the following during the term of this Agreement:

a.      incur debt for or on behalf of the Company other than in the ordinary course of business;

b.      change the name utilized by the Company;

c.      except as set forth in Section 5 hereof, transfer title to or control over any of the Company's assets;

d.      do any other act not in the ordinary course of a restaurant business or not for the betterment of the Company;

e.      enter into any long term commitments on behalf of the Company; or

f.      make capital improvements or incur additional expenses outside of the ordinary course of business, <u>provided however,</u> Manager may make capital improvements outside of the ordinary course of business so long as the cost of such improvements are not charged to the estate.

3.      **Term.**

a.      The term of this Agreement (the "Term") shall commence as of the Effective Date and shall terminate on the earlier of (a) the date the Bankruptcy Court enters an

3

order which does not approve the terms of this Agreement, or (b) termination of this Agreement in accordance with Section 8 hereof.

4.    **Personnel.**

a.    Company shall provide Manager with the employees necessary for the operation of the Business, but nothing herein shall be deemed to require Company or Manager to guarantee employment to employees or that the staffing levels that exist as of the Effective Date will be maintained during the term of this Agreement, and Manager shall be permitted to, at its expense, engage independent contractors or hire or use its employees to assist it.

b.    Anything to the contrary herein notwithstanding, the sale and service of alcoholic beverages shall be considered under the direction and control of Company and shall be conducted with due diligence, and in accordance with the standards maintained in like restaurants in Las Vegas and shall not be in violation of the statutes and regulations thereunder governing the sale of alcoholic beverages.

c.    Manager will supervise, direct, discipline, and, if necessary and subject to Company's consent not to be unreasonably withheld, discharge personnel working at the Business, provided, that, Company shall have the right, with consultation from Manager, to employ or discharge any employee who is providing services at the Business solely in connection with the purchase and sale of alcoholic beverages.

5.    **Books, Account, Records, Receipts, and Alcohol Payments.**

a.    Company and Manager will maintain, at Manager's expense, complete and accurate books of account, and all sales, gross receipts, use tax records and returns and employment records for the Business.  All such records and books will be kept and prepared in accordance with generally accepted accounting principles and general management practices.

4

Such books and records shall be available for inspection and audit by Company at any time during Manager's business hours upon not less than forty-eight (48) hours written notice.

b.    Manager will supply Company with sufficient information to discharge all alcoholic beverage, sales, franchise and federal income and payroll tax (collectively "Tax") reporting requirements not later than three (3) days prior to the date on which such Tax is due, as may be extended by properly acquired extension, and Manager shall pay such Tax when due on behalf of Company from funds collected by Manager from the Business or, if required, as advanced under Section 7 hereof..

c.    After this Agreement is approved by the Bankruptcy Court, (i) Manager shall deposit all receipts and make all disbursements relating to the Business into segregated management account(s) in the name of the Company maintained at a bank of Manager's choice (subject to the requirements of the Office of the United States Trustee for debtor in possession accounts); (ii) The management account(s) shall be opened and maintained exclusively by Manager, but in the name of the Company; (iii) The Company shall promptly sign all necessary bank account information to authorize and approve Manager and its designated employees and officers as the exclusive signatories to any such bank accounts; (iv) Manager shall be authorized to utilize all of the Debtor's cash in any existing bank account or on hand to operate the business from and after the Effective Date; and (v) Manager shall also be permitted to establish bank accounts in its own name and shall be allowed to transfer funds between the Company and Manager's accounts as needed to operate the business.

d.    Manager shall collect all revenues from the Business on behalf of the Company and shall insure that all deposits are made not later than forty-eight (48) hours after receiving same, into the account(s) as provided hereinabove.

5

e.       After this Agreement is approved by the Bankruptcy Court, Manager shall make timely payment of all operating expenses for alcoholic beverages from an account in the name of the Company maintained exclusively by the Manager.

f.       Manager shall provide monthly financial reporting and other reasonably requested financial information to permit the Debtor to file its monthly operating reports with the Bankruptcy Court.

### 6.       Compensation.

For each calendar month of the Term (or if any month of the Term commences other than the first of the month pro-rated for each such portion thereof) (the "Pay Period"), the Manager shall be entitled to all of the benefits hereunder and shall be permitted to use the assets of the Company and shall receive a fee equal to all revenues of the Company after paying all ordinary and necessary expenses of the Business, including but not limited to goods purchased, payroll, rent, taxes and insurance. Manager shall be responsible for all expenses incurred for operation of the Business that become due on or after the Effective Date and during Manager's period of operation of the Business under this Agreement. For avoidance of doubt, the Manager shall not be liable for any claim, debt, expense or liability (legal or equitable) of the Company or Business incurred or accrued prior to the Effective Date. Manager shall be solely responsible for all losses, if any, during the period of operation of the Business under this Agreement from and after the Effective Date.  The Company agrees that in consideration for the benefits to the estate hereunder, the Manager, or its designee, shall be permitted to acquire the Business in a private sale transaction pursuant to Bankruptcy Rule 6004(f)(1). In the event the Debtor accepts any higher or better offer, any such offer shall, as part of or in addition to the purchase price, repay

6

Manager in cash at closing the accrued administrative claim for all operating losses and all expenses incurred by Manager hereunder, if any.

### 7. **Funding by Manager**

Manager recognizes that the operating expenses of the Business may be in excess of all revenues from the operation of the Business during the Term. Manager is authorized to use its own funds, as may be necessary, in addition to the assets and property of the Company, to fund any deficiencies in operating expenses for the Business.

### 8. **Termination.**

a. Notwithstanding any other provisions of this Agreement, the Company may, in its sole discretion, immediately terminate this Agreement at any time should any of the following occur: (a) Manager's material breach of, or material failure to perform, any term, representation, condition or responsibility by Manager under this Agreement which is not cured within 10 days after receipt of notice of such breach; (b) failure to maintain Workers' Compensation Insurance and General Liability Insurance; or (c) conduct by Manager that is determined by a court of competent jurisdiction to be grossly negligent or fraudulent.

b. Manager may terminate this Agreement on one business day notice upon any of the following events, in its sole discretion:

(i) the entry of an order requiring the dismissal or conversion to Chapter 7 of the Chapter 11 case;

(ii) the entry of an order requiring the appointment of a trustee or examiner in the Chapter 11 case;

7

(iii)    the entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any assets of the Debtor; or

(iv)    the filing of a Plan to which the Manager does not consent.

c.    Manager may terminate this agreement for any reason on three (3) business days notice to the Company.

d.    In the event this Agreement is terminated, Manager is replaced by any third party, or in the event Manager or its assignee does not acquire the assets of the business, Manager shall have an allowed administrative claim for all operating losses and all expenses incurred by Manager.

9.    **Representations and Warranties of Manager.**

a.    Manager is duly authorized to enter into and perform this Agreement.

b.    Manager has the personnel and skills to perform the services required of it pursuant to this Agreement.

c.    Manager will perform all of its services on behalf of, for the benefit of, and in the name of, the Company.

d.    Manager is aware that the Company is now a debtor in possession pursuant to a chapter 11 bankruptcy filing.

f.    Manager warrants and represents it will procure and shall maintain, at its own expenses, insurance in adequate amounts and coverage of such types and amounts as are usual and customary for similar businesses or as may be required by law, or by the United States Trustee, including comprehensive general liability insurance, workers' compensation, and employers' liability insurance, business interruption insurance, and any other insurance deemed

8

necessary for the operation of the Business. Manager agrees that said insurance coverage shall name the Company and such other persons as the Manager may reasonably request, as additional insureds and shall be with a carrier authorized to do business within the jurisdiction of the Company and whom Manager shall approve in its reasonable discretion..

   10.    **Representations and Warranties of the Company.**

        a.    The Company is authorized to enter into and perform this Agreement subject to obtaining the appropriate approvals and orders from the U. S. Bankruptcy Court to implement and put into effect this Agreement.

        b.    The Company has all necessary licenses and permits to operate a restaurant business, including the sale of alcoholic beverages at the Business.

        c.    The Company is not prohibited by any law, regulation, contract, agreement or agency from entering into and performing under this Agreement.

        d.    The Company shall file a motion by no later than August 8, 2011 seeking expedited approval of this Agreement and shall use its best efforts to obtain an order approving this Agreement by no later than August 11, 2011.

   11.    **Amendments.**

   Any amendment to this Agreement shall be made in writing and signed by the parties against whom enforcement shall be sought.

   12.    **Independent Contractor.**

   The parties intend that the Manager render services hereunder, as an independent contractor, and nothing herein shall be construed to be inconsistent with this relationship or status.  The Manager shall be responsible for its own taxes.

Management Agreement 080511v4

1375168-2

13.    **Assignment**.

This Agreement and all rights and obligations of the Company and the Manager shall

inure to the benefit of its respective permitted successors and assigns.  The duties and rights of

the parties hereunder are personal to such parties and may not be delegated or assigned without

the prior written consent of the other party.  Notwithstanding the foregoing, Manager may assign

this Agreement to an affiliate of the Manager.

14.    **Notices**.

All notices and other communications provided for in this Agreement shall be in writing

and shall be deemed to have been duly given when delivered personally, by registered or

certified mail, postage prepaid, or by a nationally recognized overnight courier service as

follows:

|  |  |
|---|---|
| If to the Manager: | CHLN, Inc<br>1510 West Loop South<br>Houston, Texas 77027<br>Attention:    Steven L. Scheinthal |
| With a copy to: | Adam H. Friedman, Esq.<br>Olshan Grundman Frome Rosenzweig & Wolosky LLP<br>Park Avenue Tower<br>65 East 55th Street<br>New York, New York 10022<br>(212) 451-2300 |
| If to the Company: | Beso, LLC<br>3720 S Las Vegas Blvd.<br>Las Vegas, NV 89109<br>Attn:   William M. Braden |
| With a copy to: | Lenard E. Schwartzer, Esq.<br>Schwartzer & McPherson Law Firm<br>2850 South Jones Boulevard, Suite 1<br>Las Vegas, Nevada 89146 |

10

Management Agreement 080511v4

1375168-2

Telephone: (702) 228-7590

or to such other address as any party may have furnished to the other party in writing in accordance herewith.

**15.  Miscellaneous.**

a.      Governing Law.  This Agreement shall be governed by and in accordance with the laws of the State of Nevada without regard to conflict of law rules thereof.

b.      Severability.  If any provision of this Agreement or the application of any such provision to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances other than those to which it is so determined to be invalid and unenforceable, shall not be affected thereby, and each provision hereof shall be validated and shall be enforced to the fullest extent permitted by law.

c.      Survivorship.  The respective rights and obligations of the parties hereunder shall survive any termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations.

d.      Headings.  All descriptive headings of sections and paragraphs in this Agreement are intended solely for convenience, and no provision of this Agreement is to be construed by reference to the heading of any section or paragraph.

e.      Entire Agreement.  This Agreement represents the entire agreement between the parties.  All agreements and representations of the parties are set forth herein.  This Agreement cannot be modified or amended except in a writing signed by the parties.

11

Management Agreement 080511v4

1375168-2

f.      Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.    **Bankruptcy Court:  Arbitration.**

a.      The Bankruptcy Court shall have jurisdiction over this Agreement while the Company remains under the jurisdiction of the Bankruptcy Court.

b.      After the Company ceases to be subject to the jurisdiction of the Bankruptcy Court, any disputes relating to this Agreement or the performance by any party hereunder will be settled pursuant to the then current expedited procedures applicable to the then current commercial arbitration rules of the American Arbitration Association, such arbitration to be conducted in Las Vegas, Nevada by three arbitrators, one appointed by each of the Manager and the Company and the third selected by the first two appointed arbitrators. The parties will each instruct the arbitrators to render a determination of any dispute so submitted within ten (10) days of the selection of the third arbitrator.  All costs, fees and disbursements arising in connection with the arbitration will be borne as the arbitrators deem equitable under the circumstances.

17.    **Indemnification.**

Manager unconditionally indemnifies, guarantees and holds Company and its members, successors and assigns, harmless against any and all liabilities arising from the Business from and after the Effective Date as a result of the gross negligence or fraud of Manager in the performance of Manager's activities hereunder related to Manager's management of the Business.  Manager agrees to give written notice to Company promptly after receiving notice of any claim against Manager or Company covered by the foregoing indemnity.  Manager shall not

12

indemnify the Company or its members, successor and assigns from any liability arising from or as a result of negligence or willful misconduct of the Company its officers, members, employees, agents or their assigns.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

**The Company:**
**BESO LLC**

**By: Beso Management, LLC**
**Its manager**

By: _____
Name:  William M. Braden
Title:   Manager

**The Manager:**
**CHLN, INC.**

By: _____
Name:   Steven L. Scheinthal
Title:    V.P.

13

# EXHIBIT "B"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Lenard E. Schwartzer
Nevada Bar No. 0399
Emelia L. Allen
Nevada Bar No. 11898
Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada  89146-5308
Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
E-Mail: bkfilings@s-mlaw.com
*Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>**BESO LLC**,<br><br>                                    Debtor. | Case No. BK-S-11-10202-MKN<br>Chapter 11<br><br>**[PROPOSED] INTERIM ORDER GRANTING DEBTOR'S MOTION FOR APPROVAL OF MANAGEMENT AGREEMENT** *NUNC PRO TUNC;* **REQUEST FOR INTERIM RELIEF RE FINANCING**<br><br>Date:<br>Time: |

THIS MATTER having come before the Court upon the motion of Beso LLC (the "Debtor" or "Beso"), for approval Management Agreement with CHLN, Inc. and for obtaining credit not in the ordinary course of business (the "Motion") seeking, among other relief, an interim order allowing post-petition financing.  Having granted an Order Shortening Time and having considered the Motion and finding good cause at stated on the record pursuant to Bankruptcy Rule 7052 and F.R.Civ.P. Rule 52, it is

1

Debtor's Motion to Approve Management Agreement

**ORDERED** the Management Agreement is approved on an interim basis until the final hearing by this Court; and it is

**ORDERED** that CHLN, Inc. (the "Manager") may (a) take over the management duties of operating the Beso Restaurant and (b) fund the operation of the Beso Restaurant. The terms of the loan by the Manager are as follows:

| | |
|---|---|
| Amount: | Not specified.  Manager is authorized to use its own funds, as may be necessary, in addition to the assets and property of the Debtor, to fund any deficiencies in operating expenses for the Business. Management Agreement ¶7. |
| Limits: | $_____ (until further order of this Court) |
| Use of Proceeds: | Operating expenses for the Beso Restaurant. |
| Interest Rate: | None. |
| Fees: | None. |
| Priority | Administrative priority under Bankruptcy Code §503(b)(1). |
| Security: | None. |
| Termination: | Breach by Manager. Management Agreement ¶8.a. Conversion to Chapter 7, Appointment of trustee or examiner, Order lifting stay, filing of Plan without Manager's consent.Management Agreement ¶8.b. Termination for no cause. Management Agreement ¶8.c |
| Carve-outs: | None. |
| Surcharge: | None. |
| Modification of Stay: | None. |
| Adequate Protection: | None |
| Indemnity: | None. |

And it is further

**ORDERED** that this Interim Order shall take effect and be fully enforceable immediately upon entry, notwithstanding the provisions of Bankruptcy Rule 6004(h), which, to the extent applicable, are waived and shall not apply to this Interim Order; and it is

**ORDERED** that the Final Hearing to consider entry of a Final Order and final approval of

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

2

the Management Agreement and related post-petition financing is scheduled for August ___, 2011 at ___ _.m. at the United States Bankruptcy Court for the District of Nevada.  The Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order, together with copies of this the Motion on all parties in interest.  Any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court by no later than August  ___, 2011, which objections shall be served so that the same are received on or before such date by:  (i) counsel for the Debtor; and (ii) the Office of the United States Trustee.

**IT IS SO ORDERED**.

Prepared by:

  /s/  Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
Schwartzer & McPherson Law Firm
2850 South Jones Blvd., Suite 1
Las Vegas NV  89146
*Attorneys for Debtor and Debtor in Possession*


In accordance with LR 9021, counsel submitting this document certifies as follows (check one):

  X  The court has waived the requirement of approval under LR 9021.

____ No parties appeared or filed written objections, and there is no trustee appointed in the case.

___ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and any trustee appointed in this case, and each has approved or disapproved the order, or failed to respond, as indicated above.


  /s/  Lenard E. Schwartzer
Lenard E. Schwartzer, Esq.
*Attorneys for Debtor and Debtor in Possession*


                    # # #

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Debtor's Motion to Approve Management Agreement