1  Lenard E. Schwartzer
   Nevada Bar No. 0399
2  Emelia L. Allen
   Nevada Bar No. 11898
3  Schwartzer & McPherson Law Firm
4  2850 South Jones Boulevard, Suite 1
   Las Vegas, Nevada  89146-5308
5  Telephone:  (702) 228-7590
   Facsimile:  (702) 892-0122
6  E-Mail:  bkfilings@s-mlaw.com
7  *Attorneys for Debtor and Debtor in Possession*

8  **UNITED STATES BANKRUPTCY COURT**

9  **DISTRICT OF NEVADA**

10  In re:                                    Case No. BK-S-11-10202-MKN

11  **BESO LLC,**                             Chapter 11

12                              Debtor.        **MOTION FOR ORDER (1)
13                                             AUTHORIZING A PRIVATE SALE OF
                                               SUBSTANTIALLY ALL OF THE
14                                             DEBTOR'S ASSETS FREE AND CLEAR
                                               OF ANY AND ALL LIENS, CLAIMS,
15                                             ENCUMBRANCES, AND OTHER
                                               INTERESTS; (2) APPROVING THE
16                                             ASSET PURCHASE AGREEMENT IN
                                               CONNECTION THEREWITH;  AND (3)
17                                             GRANTING RELATED RELIEF**

18                                             Date:   September 26, 2011
                                               Time:  1:30 p.m.
19

20          Beso LLC (the "Debtor" or "Beso"), by and through its counsel, hereby files this Motion

21  For Order (1) Authorizing A Private Sale Of Substantially All Of The Debtor's Assets Free And

22  Clear Of Any And All Liens, Claims, Encumbrances, And Other Interests; (2) Approving The

23  Asset Purchase Agreement In Connection Therewith; and (3) Granting Related Relief (the

24  "Motion").  This Motion is made and based upon 11 U.S.C. §§ 105 and 363, Fed. R. Bankr. P.

25  2002, 6004, and 9006, the Declaration of William M. Braden (the "Braden Declaration"), the

26  Points And Authorities set forth herein, the pleadings on file, judicial notice of the Debtor's

27  Monthly Operating Reports, and any argument entertained at the hearing on the Motion.

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

As set forth in the Motion, the Debtor seeks entry of an order: (1) authorizing the private sale of all of the Debtor's assets related to the Beso Restaurant and Eve Nightclub business (the "Beso Assets") to CHLN, Inc., a Delaware corporation ("CHLN" or "Purchaser") for $1,000,000, subject to certain adjustments, free and clear of any and all claims, liens, encumbrances, and other interests; (2) approving the Asset Purchase Agreement attached as Exhibit "A" (the "APA"); and (3) granting related relief (the "Approval Order").

The Purchaser is currently managing the Beso Restaurant pursuant to an Interim Order Granting Debtor's Motion for Approval of Management Agreement *Nunc Pro Tunc;* Request for Interim Relief re Financing (the "Management Order").

The Purchaser is an affiliate of Landry's, Inc. ("Landry's"). A newly formed entity ("Newco") owned 50% by Landry's, Inc. or an affiliate of Landry's, 30% by Eva Longoria ("Longoria") and 20% by Jonas Lowrance ("Lowrance") will have the right to use the Beso Assets and CHLN will manage the Beso Assets. Longoria and Lowrance are currently members of the Debtor limited liability company. These shareholders will have entered into a Shareholder Agreement concerning Newco. In addition, Longoria will have entered into an Appearance Agreement with Newco which provides that Longoria will make personal appearances at the Beso Restaurant and Eve Nightclub. Longoria and CHLN have entered into an Indemnity Agreement dated August 5, 2011 under which CHLN has agreed to, among other things, indemnify and hold harmless Longoria from and against (a) any and all reasonable attorneys' fees and actual documented costs incurred from and after the date thereof related to the lawsuits identified in the Indemnity Agreement, including but limited to the lawsuits by the Nachums, up to a maximum of $500,000, and (b) any damages or monetary judgments ultimately awarded against Longoria in any of such lawsuits. A copy of the Indemnity Agreement is attached as Exhibit "B" to the Braden Declaration.

The Crystals at CityCenter, LLC (the Debtor's "Landlord") has consented to the sale.

The Debtor has determined that a sale of its business is necessary at this time to assure, at least, some recovery for creditors and that reorganization is not feasible without the sale.

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

The Debtor has determined that the sales price being offered by the Purchaser is reasonable and, most likely, the best price that can be obtained.

**Factual Basis for Sale**

1.     Debtor filed for relief under Chapter 11 of the Bankruptcy Code pursuant to 11 U.S.C. § 1107(a) on January 6, 2011.

2.     Debtor remains the debtor-in-possession.

3.     Debtor has been and is engaged in the business of operating a restaurant known as "Beso" ("Beso Restaurant") and the club concept known as "Eve" ("Eve Nightclub") located at 3720 Las Vegas Blvd., S. #260, Las Vegas, Nevada 89158. The premises were leased from the Landlord. The pre-petition lease from the Landlord has been deemed rejected.

4.     Debtor has already terminated daily operation of Eve Nightclub to reduce its losses.

5.     Beso has not been able to locate a suitable financial and management partner and Beso has not had the ability to assume Beso's lease of its business premises from the Landlord because of the substantial pre-petition delinquency and post-petition delinquencies in the payment of rent for which the Landlord would be entitled to a prompt cure. The amount of the debt to the Landlord for pre-petition back rent is approximately $2,270,000. The amount of the debt to the Landlord for post-petition rent is approximately $1,306,000. Without the ability to assume the lease, the Debtor was and is unable to formulate a feasible plan of reorganization. The rejected lease allows the Landlord to seek immediate eviction which would terminate the business of the Debtor and eliminate the Debtor's interest in the tenant improvements which, along with the ongoing operation of the Beso Restaurant. Those are the principal assets of the Debtor. In addition, the Debtor has not paid the rent accrued post-petition, in the reduced amount required by the Landlord, since the filing of the petition.

6.     The diminishing level of cash available from operations has reached the point where payment to employees and vendors was becoming more difficult and questionable and closing of the Beso Restaurant was imminent.

7.     The management of the Debtor, for the past several months, attempted to locate a partner/investor to help finance a plan of reorganization. This search was unsuccessful. But as a

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

result of this search, Landry's[1] expressed an interest in purchasing the Debtor's business on condition that (a) a lease could be negotiated with the Landlord and (b) Eva Longoria would continue to be associated with the business. Those two conditions can be met.

8.    The Landlord has agreed to accept $300,000, to be applied toward its post-petition administrative rent claim, which is in excess of $1,300,000, and which is necessary for the proposed sale to be approved and closed.  In addition, the Landlord agreed to negotiate with the Purchaser for a new lease of the premises presently occupied by the Debtor. If the proposed sale to the Purchaser is approved by the Court and closed in accordance with  its order, the Landlord has further agreed that the balance of its administrative claim will be subordinated to other administrative priority creditors and the priority secured claim of the State of Nevada Department of Taxation for sales tax. The payment of the Landlord's reduced claim and the payment of the State of Nevada Department of Taxation priority claim at Closing is a requirement of the APA.

9.    The Debtor filed the Motion for Approval of Management Agreement *Nunc Pro Tunc;* Request for Interim Relief re Financing seeking approval of a Management Agreement with CHLN, Inc. (the "Management Agreement") which motion was heard on August 16, 2011. Under the Management Agreement, CHLN, Inc. (the "Manager"), a subsidiary of Landry's, Inc., agreed to assume daily management of the Beso Restaurant and loan the funds necessary to pay the current operating expenses of the Beso Restaurant. The Court approved the Management Agreement by entering Management Order.

---

1. Landry's is a national, diversified restaurant, hospitality and entertainment company principally engaged in the ownership and operation of high end and casual dining restaurants, primarily under the names of Rainforest Cafe, Saltgrass Steak House, Landry's Seafood House, Claim Jumper, Bubba Gump Shrimp Co., and The Chart House as well as the Signature Series: Vic & Anthony's, Brenner's Steakhouse, Grotto, LaGriglia, Pesce, Willie G's and Oceanaire. The Company is also engaged in the ownership and operation of hospitality businesses, including the Golden Nugget Hotel & Casinos in Las Vegas and Laughlin, Nevada, the Kemah Boardwalk, the San Luis Resort, Inn at the Ball Park and the Downtown Aquarium in Denver and Houston.

Debtor's Motion to Approve Management Agreement 082411

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

10.     Under the Management Agreement, the Debtor has also agreed to propose to sell its assets to the Manager, CHLN, Inc., or its designee, in a private sale transaction, subject to Court approval.

11.     The Debtor believes that the proposed sale of the Debtor's business to Purchaser for $1,000,000 plus the amount of any funds the Manager loans under the Management Agreement less any amounts advanced under the Management Agreement for payment of rent to the Landlord between August 8, 2011 and the closing of the sale, is in the best interests of the Debtor's bankruptcy estate and its creditors and, by this motion, the Debtor proposes such a sale.

12.     The proposed sale will assure that the bankruptcy estate is administratively solvent and that the administrative and pre-petition priority creditors will receive a dividend.

## Memorandum of Law

### PRIVATE SALE OF SUBSTANTIALLY ALL ASSETS

11 U.S.C. §363(b)(1) provides:

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...

Since the Beso Assets constitute Debtor's on-going business and are substantially all of the Debtor's business assets, the proposed sale is out of the ordinary course of the Debtor's business. By its terms, §363(b)(1) requires a debtor in possession to obtain Court approval, after notice and hearing, of a contract "other than in the ordinary course of business." *Licensing by Paolo, Inc. v. Sinatra ( In re Gucci),* 126 F.3d 380, 387 (2nd Cir.1997) ("A sale of a substantial part of a Chapter 11 estate other than in the ordinary course of business may be conducted if a good business reason exists to support it. Purchasers of these assets are protected from a reversal of the sale on appeal so long as they acted in good faith.") (citations omitted). In order to approve a sale of substantially all a debtor's assets outside the ordinary course of business, the following elements must be shown:

(1) a sound business reason exists for the sale;

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1     (2) adequate and reasonable notice to interested parties, including full disclosure of the sale

2     terms and the Debtor's relationship with the buyer;

3     (3) the sale price is fair and reasonable; and

4     (4) the proposed buyer is proceeding in good faith.

5 *In re Medical Software Solutions*, 286 B.R. 431, 439-40 (Bankr.D.Utah2002); *See also In re*

6 *Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.Del.1991); *WBQ Partnership v. Virginia*

7 *Dep't of Med. Assistance Serv. (In re WBQ Partnership)*, 189 B.R. 97, 102 (Bankr.E.D.Va.1995).

8     A business justification must be shown to support a debtor's selling property out of the

9 ordinary course of business. *See Committee of Equity Security Holders v. Lionel Corp. (In re*

10 *Lionel Corp.)*, 722 F.2d 1063, 1070–1071 (2d Cir.1983); *In re Texaco Inc.*, 81 B.R. 813, 817

11 (Bankr.S.D.N.Y. 1988). As stated in *In re ASARCO LLC*, 441 B.R. 813, 823 (S.D.Tex. 2010):

12
13
14
15         Approval of § 363(b) transactions requires that the bankruptcy court find that the debtor "justify[ ] the proposed transaction. That is, for the debtor-in-possession ... to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."

16 *See also, In re Walter*, 83 B.R. 14, 17 (9th Cir. BAP 1988).

17     As the Court stated in Lionel Corp., "[t]he rule we adopt requires that a judge determining a §

18 363(b) application expressly find from the evidence presented before him at the hearing a good

19 business reason to grant such application." *Lionel*, 722 F.2d at 1070-71.

20     Section 363(b) does not require that the Court substitute its business judgment for that of the

21 Debtor, *see, e.g., Ionosphere Clubs*, 100 B.R. at 676 (court will not substitute a hostile witness's

22 business judgment for debtor's, unless testimony "established that the [debtor] has failed to articulate a

23 sound business justification for its chosen course"). Rather, the Court should ascertain whether a

24 debtor has articulated a valid business justification for the proposed transaction. This is consistent

25 with "the broad authority to operate the business of the Debtor . . . [which] indicates congressional

26 intent to limit court involvement in business decisions by a Trustee . . . [so that] a court may not

27 interfere with a reasonable business decision made in good faith by a Trustee." *In re Airlift Int'l, Inc.*,

28 18 B.R. 787, 789 (Bankr. S.D.Fla. 1982).

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1   "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a

2   decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's

3   conduct." *In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992); *In re Integrated*

4   *Resources, Inc.*, 1147 B.R. at 656-57 (S.D.N.Y. 1992)(a debtor's business judgment is entitled to

5   substantial deference with respect to the procedures to be used in selling assets from the estate).  The

6   Debtor has determined that the maximization of the return to creditors can best be accomplished

7   through the proposed asset sale upon the terms contained in the Asset Purchase Agreement and that the

8   transaction is in the best interests of its estate and creditors and should be approved by the Court.

9        In determining whether a "sound business purpose" exists with respect to a sale of assets prior

10  to confirmation of a plan, courts have looked at such factors as: the proportionate value of the asset to

11  the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of

12  reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition

13  on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any

14  appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions, and

15  most importantly perhaps, whether asset is increasing or decreasing in value. *Lionel,* 722 F.2d at 1071.

16  **A. The Debtor Has Exercised Sound Business Judgment**

17       The Debtor believes that the sale to Purchaser represents a prudent and proper exercise of its

18  business judgment and is supported by articulated business reasons because, absent such a sale,

19  the Debtor would be likely be forced to liquidate, resulting in no distribution to unsecured

20  creditors, the loss of jobs of the Debtor's employees, and the loss of the business's going concern

21  value discussed above.  With the sale to Purchaser, the Debtor is maximizing the value of its

22  assets, preserving jobs and generating proceeds for distribution to its creditor constituents. *See,*

23  *NLRB v. Bildisco & Bildisco,* 465 U.S. 513 (1984)(the "fundamental purpose of reorganization is

24  to prevent the debtor from going into liquidation, with an attendant loss of jobs and possible

25  misuse of economic resources").

26       The Braden Declaration shows, in the Debtor's business judgment, the relief sought will

27  maximize the Debtor's recovery on its assets and is therefore in the best interest of its estate and

28  creditors. This decision is supported by the fact that the Debtor has not operated profitably in its

Chapter 11 case to date and is anticipated to operate at a significant cumulative loss going forward. Absent an immediate infusion of cash, the Debtor will have to close the Beso Restaurant. Consequently, without approval of the sale, the Debtor will be facing an immediate liquidation of the assets of a closed restaurant

If the Debtor was immediately liquidated, the Debtor will lose all of the going concern value of its assets. As a result, the Debtor believes that if the proposed sale is not approved, the recovery by the estate would be minimal.

An immediate sale of the Debtor's assets is the only viable option that will allow for any recovery to creditors on the remaining assets. Any additional delay will leave the Debtor with assets that will have no or little value compared to the values obtainable as a going concern. Time is therefore of the essence with respect to approval of the proposed sale. Without the sale, the Debtor has no exit scenario other than liquidation, leaving creditors with far less than the amounts they are likely to receive from the proposed sale of the Assets as a going concern.

**B.    Notice**

This Motion and notice of the terms of the sale and the Purchaser's relationship to Eva Longoria and Jonas Lowrance have been fully disclosed. The Debtor did not ask for an order shortening time in order to allow other parties to present alternative offers.

**C.    The Sale Price Is Fair and Reasonable**

The sale to Purchaser represents the highest and best price for the Business secured by the Debtor to date. As stated in the Braden Declaration, in the Debtor's view, the Purchase Price represents substantial value to the Debtor's estate and provides favorable terms for disposition of the assets as a going concern in exchange for fair and reasonable consideration. The Debtor attempted to market the Business to other restaurant and nightclub operators. Landry's was the one that (a) showed interest and (b) had been pre-approved by the Debtor's landlord. Moreover the Debtor's negotiations with the Purchaser ensured that the ultimate purchase price secured for the

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

Debtor's Motion to Approve Management Agreement 082411

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    Beso Assets is the highest available and does provide significant chance of providing payment of

2    administrative[2] and priority claims[3] in full and a possible distribution to unsecured creditors.

3    **D.    The Sale Terms Were Negotiated In Good Faith**

4    As set forth in the Braden Declaration, the Purchase Agreement is the product of good faith

5    negotiations between the parties.  The Debtor's options for a buyer are limited by the fact that the large

6    amount in back rent owed to the Landlord gives the Landlord veto power of any potential buyer. No

7    party would buy the Beso Assets unless it was assured of renegotiating a new lease with the Landlord.

8    Landry's has the Landlord's approval. Consequently, the Debtor requests that this Court find that these

9    negotiations were in good faith and that the Purchaser is a "good faith purchase" under 11 U.S.C. §

10    363(m).

11    Landry's has indicated that assurance of Eva Longoria's continued involvement in the

12    Business is an element in its decision to make an offer to purchase the Debtor's assets.  The Landlord

13    has indicated that assurance of Eva Longoria's continued involvement in the Business is an element in

14    its decision to negotiate a new lease with the Purchaser. Eva Longoria conditioned her continued

15    involvement in the Business upon Jonas Lowrance retaining an interest in the Business.

16    **E.    Asset Sale Free And Clear Of Encumbrances**

17    In addition to seeking approval of a private sale outside of the ordinary course of business, the

18    Debtor seeks approval to sell its assets as a going concern, free and clear of any and all liens, claims or

19    encumbrances in accordance with 11 U.S.C. § 363(f).  A debtor-in-possession may sell property under

20    §§ 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate"

21    if one of the following conditions are satisfied:

22    (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

23    _____

24    2  The Landlord's administrative claim of approximately $1,306,000 is the largest administrative

25    priority claim. The Debtor's counsel will have a claim of approximately $100,000. The normal
operating expenses of the Debtor, other than rent and legal fees, have been paid in the ordinary

26    course of operations.

27    3  There is a priority claim of $491,753 owed to the State of Nevada Department of Taxation. See
Claim #11-amended

28

1    (2) such entity consents;

2    (3) such interest is a lien and the price at which such property is to be sold is greater than the

3    aggregate value of all liens on such property;

4    (4) such interest is in *bona fide* dispute; or

5    (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money

6    satisfaction of such interest.

7    This Court previously approved a settlement by and among the Debtor, the Landlord and

8    all mechanics lien claimants which has resulted in the satisfaction of all such liens. See Order

9    Granting Motion to Confirm Settlement [Docket No. 108].

10    However, the Debtor believes that there are only five liens of record:

11    a.    Sysco Las Vegas, Inc. (UCC-1 filed 11-18-2009) - which has been paid in full.

12    b.    Sysco Newport Meat Company UCC-1 filed12-02-2009) - which has been paid in

13    full.

14    c.    Anthony Vicidomine (UCC-1 filed 05-17-2010) - a lien to secure a payment on an

15    obligation to pay Vicidomine's claim  for purchase price of his membership interest in the

16    Debtor by the Debtor.

17    d.    The Crystals at CityCenter, LLC (UCC-1 filed 06-17-2010) – consents to sale. The

18    Crystals' lien secures all of the past due rent, both pre-petition and post-petition,

19    which exceeds  $3,575,000.

20    e.    Eva Longoria (UCC-1 filed 08-06-2010) – consents to sale.

21    Vicidomine remains a member of the Debtor.  The Debtor would assert that Vicidomine's

22    lien is in *bona fide* dispute.

23    (a)    It is subordinate to the liens held by the Landlord and Longoria.  Pursuant to the

24    Settlement and Amended Promissory Note Agreement With Security Interest, a copy of

25    which is attached as Exhibit "C" to the Braden Declaration, Vicidomine's security interest

26    is so subordinated.  That agreement states:

27    k.    the Company agrees that in consideration for the amendment to the
Notes, the Company hereby grants a security interest to the Seller in all of

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

10

the Company's furniture, fixtures, equipment, accounts, receivables, general intangibles, deposit accounts, contracts, franchise agreements and all personal property of whatever description, wherever located. now owned or hereafter acquired; provided, however, that **Vicidomine agrees that the security interest granted herein is junior and subordinate to the security interest previously granted by the Company to Landlord in the Lease and to Eva Longoria Parker pursuant to a Loan Agreement dated October 26, 2009 ("Longoria Loan"),** which subordination applies to Landlord and the Longoria Loan only;

Vicidomine's lien, if any exists, is "out of the money" because it is subordinate to the $1,300,000 lien in favor of the Landlord and the $1,000,000+ lien in favor of Longoria.

(b)     It is subject to be set aside as a preference because the lien arose to secure payment of a pre-existing obligation to an insider within one year of the filing of the Debtor's petition. Bankruptcy Code §547 allows a debtor in possession to avoid a security interest if the debtor can show: (1) a transfer made to or on behalf of a creditor, (2) with regard to an insider/creditor[4], on or within 1 year of the filing of a bankruptcy petition, (3) the debtor was insolvent on the date of the transfer, (4) the transfer was for an antecedent debt, and (5) the transfer allowed the creditor to receive more than it would have received in a Chapter 7 liquidation. All of these elements are present with regard to Vicidomine's alleged security interest.

(c)     It is a claim that is supposed to be subordinated under Bankruptcy Code §510(b) because it arose from the purchase of a security (the purchase by the Debtor of Vicidomine's membership interest in the Debtor). See Exhibit "C". *SeaQuest Diving, L.P. v S & J Diving, Inc. (In re SeaQuest Diving, L.P.)*, 579 F.3d 133 (5th Cir. 2009) (claims of former investors should be subordinated to claims of other creditors); *In re Betacom Phoenix, Inc.* 240 F.3d 823 (9th Cir. 2001).

(d)     It is subject to disallowance based upon the fact that Vicidomine received preferential payments from the debtor within one year of the filing of the bankruptcy

---

4. The Third Amendment to Operating Agreement of Beso dated effective as of December 1, 2009 provides that Vicidomine held a 2% interest in the Debtor.

Debtor's Motion to Approve Management Agreement 082411

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 - Fax: (702) 892-0122

1    petition which are avoidable preferences.  Bankruptcy Code §502(d). See Braden

2    Declaration.

3        Based on these facts, the lien and claim of Vicidomine are in *bona fide* dispute.

4    **F.    PRIVATE SALE**

5        Bankruptcy Code §363(b) allows a private sale. *In re Ancor Exploration Company,* 30

6    B.R. 802, 808 (Bankr.N.D.Okla.1983) ("the bankruptcy court should have wide latitude in

7    approving even a private sale of all or substantially all of the estate assets not in the ordinary

8    course of business under § 363(b)"). "When a debtor desires to sell an asset, its main

9    responsibility, and the primary concern of the bankruptcy court, is the maximization of the value

10   of the asset sold." *In re Integrated Resources, Inc.,* 135 B.R. 746, 750 (Bankr.S.D.N.Y.1992),

11   (citation omitted) *aff'd,* 147 B.R. 650 (S.D.N.Y.1992). In general, a debtor must demonstrate that

12   the proposed purchase price is the highest and best offer. *Id.* See also *In re Embrace Sys. Corp.,*

13   178 B.R. 112, 123 (Bankr.W.D.Mich.1995) ("A large measure of discretion is available to a

14   bankruptcy court in determining whether a private sale should be approved. The court should

15   exercise its discretion based upon the facts and circumstances of the proposed sale." (citation

16   omitted)).

17       In the present case, the proposed sale is the only offer that has been received by the Debtor

18   after spending months searching for a financial partner.  See Braden Declaration.

19   **G.    SALE TO RELATED PARTY**

20       The proposed sale is a sale to an entity which is partly owned by Eva Longoria and Jonas

21   Lowrance. Under the Shareholder Agreement, Landry's or its affiliate controls the Purchaser. The

22   law requires that the relationship to the insiders must be disclosed, the circumstances of the

23   negotiations, the marketing efforts and the factual basis for determining the price is reasonable. As

24   stated in *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr.C.D.Cal. 1991):

25           It is not bad faith *per se* for an insider to purchase property from an estate,
         even where the insider has a fiduciary duty to the estate. *Id.,* at 869–70, citing *In re*

26       *Andy Frain Services, Inc.,* 798 F.2d 1113, 1125 (7th Cir.1986); *In re Naron &*
         *Wagner, Chartered,* 88 B.R. 85, 88 (Bankr.Md.1988); and *In re Ancor Exploration*

27       *Co.,* 30 B.R. 802,808 (Bankr.N.D.Okla.1983). The question of good faith, even
         under these circumstances however, turns on whether debtor breached its fiduciary

28

12

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

duty of full disclosure. The court in *Apex* found no lack of good faith where the purchase and sale agreement was the product of "[V]igorous, arms-length, good faith negotiations ..." which took place in a "... 'fish bowl' under the watchful eyes of the Examiner and the Committee...." *Id.,* at 870.

        \*\*\*

Clearly then, a debtor who proposes a sale of all of its assets to an insider must fully disclose to the court and creditors the relationship between the buyer and seller, as well as the circumstances under which the negotiations have taken place, any marketing efforts, and the factual basis upon which the debtor determined that the price was reasonable.

In the present case, the proposed sale is the only offer that has been received by the Debtor after spending months searching for a financial partner.  See Braden Declaration.

## DEBTOR'S LEASES AND EXECUTORY CONTRACTS

The Debtor is *not* seeking authority to assume and assign any leases and executory contracts.

Pursuant to Bankruptcy Code §365(d)(4), the lease from Landlord was deemed rejected as the Debtor 120 days after the filing of its petition. Accordingly, this lease cannot be assumed or assigned by the Debtor.

## NO BREAK-UP FEE EXCEPT REPAYMENT OF POST-PETITION ADVANCES

The Purchase Agreement does **not** provide for a Break-Up Fee.  However, the Management Agreement does provide that if the Purchaser is outbid or the Debtor breaches the Management Agreement, the Manager shall be entitled to repayment of the amounts it has advanced for the operation of the Debtor's Business under the Management Agreement. If there is a sale to a third party, payment of this obligation will be made from the proceeds of the sale at the closing of the sale. The amounts it has advanced for the operation of the Debtor's Business by the Manager are expenses that would have been entitled to administrative priority in any event. This provision has already been approved in the Management Agreement.

## WAIVER OF STAY PERIODS

To preserve the value of the Debtor's estate and expedite the closing of the transactions contemplated by the Purchase Agreement prior to the Debtor's assets losing substantially all of their value as described above, it is important that the Debtor be allowed to close the transactions

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

13

1  contemplated by the Purchase Agreement as soon as possible after all closing conditions have

2  been met or waived.  The entire rationale for the sale is premised upon (a) making the proceeds

3  immediately available to the estate and (b) eliminating further operating losses by the estate.  The

4  parties contemplate closing the sale on the business day after the entry of the Approval Order.

5  Accordingly, the Debtor hereby requests that the Court waive the fourteen (14) day stay periods

6  under Fed.R.Bankr. P. 6004(h) and 6006(d).

7  **CONCLUSION**

8      The Debtor submits that the proposed private sale of the Assets pursuant to the Purchase

9  Agreement is a sound and prudent exercise of its business judgment.  The sale to Purchaser will

10  maximize the value of the Debtor, result in a distribution to pre-petition creditors and preserve

11  jobs. The alternative is that (a) the Debtor will close the Business and terminate its employees, (b)

12  its remaining assets will be subject to a security interest in favor of the Landlord, and (c) there will

13  be limited funds for administrative expenses (derived from existing cash and the preference action

14  against Vicidomine) and large administrative claims (including the Landlord's).

15      Accordingly, the Debtor respectfully requests that (1) the Purchase Agreement be

16  approved, (2) the sale of the Assets to Purchase fee and clear of all claims, liens, interests, and

17  encumbrances be authorized, and (3) that the order become effective immediately. The proposed

18  form of Approval Order is attached as Exhibit "D".

19      Dated this 26th day of August, 2011.

20                          /s/   Lenard E. Schwartzer

                           Lenard E. Schwartzer, Esq.

                           Schwartzer & McPherson Law Firm

                           2850 South Jones Blvd., Suite 1

                           Las Vegas NV  89146

                           *Attorneys for Debtor and Debtor in Possession*

21

22

23

24

25

26

27

28

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

14

# EXHIBIT "A"

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement"), is made and entered into as of this 24th day of August, 2011 (the "Effective Date"), by and among BESO, LLC, a Nevada limited liability company ("Seller"), and CHLN, Inc., a Delaware corporation ("Purchaser").

## W I T N E S S E T H:

WHEREAS, Seller has been and is engaged in the business of operating a restaurant concept known as "Beso" and the club concept known as "Eve" located at 3720 Las Vegas Blvd. S #260, Las Vegas, NV 89158 (such business being referred to herein as the "Business" and such location being referred to herein as the "Premises");

WHEREAS, on or about January 6, 2011 (the "Petition Date"), Seller, as owner of the Business, commenced a voluntary case, Case No. 11-10202-MKN (the "Bankruptcy Case"), under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court");

WHEREAS, on August 8, 2011, Purchaser and Seller entered into a Management Agreement (the "Existing Management Agreement"), whereby the Purchaser has agreed to provide certain management services to the Seller in consideration for, among other things, the right to acquire the Business in a private sale transaction;

WHEREAS, Purchaser desires to purchase substantially all of the assets of Seller and to assume certain specified liabilities of Seller, and Seller desires to sell such assets to Purchaser and to have Purchaser assume such specified liabilities, all on the terms and conditions set forth in this Agreement and in accordance with sections 105, 363, 365 and other applicable provisions of the Bankruptcy Code, free and clear of all liens, claims, encumbrances and other interests; and

WHEREAS, the transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court and will be consummated pursuant to a sale order acceptable to Purchaser (the "Sale Order") to be entered in the Bankruptcy Case.

NOW, THEREFORE, in consideration of the foregoing and of the respective covenants, representations, warranties and agreements herein contained, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto hereby agree as follows:

## ARTICLE I

## SALE OF ASSETS; EXCLUDED ASSETS

1.1    Transferred Assets.  At the Closing (as defined in Section 2.3 below), Seller shall grant, sell, convey, assign, transfer and deliver to Purchaser, upon and subject to the terms and conditions of this Agreement, all right, title and interest of Seller in and to all of the assets, properties and rights set forth below (collectively, the "Assets"), in all cases free and clear of any security interest, pledge, hypothecation, mortgage, lien, charge, claim, interest or encumbrance

of any kind or nature (collectively, "Liens"), in each case pursuant to Section 363(f) of the Bankruptcy Code.

(a) all works, structures, fixtures, decorations, leasehold improvements, betterments, installations and additions constructed, erected or located on or attached or affixed to the Premises;

(b) all appliances, kitchen equipment, office equipment and other equipment, tools, spare parts, signage, decor items, furniture, furnishings, dinnerware, glassware, flatware, linens and other tangible personal property;

(c) all prepaid rentals, other prepaid expenses (excluding prepaid insurance), bonds, and deposits;

(d) all food and beverages, alcoholic or otherwise (as allowed by law), whether opened or unopened, all other raw materials and ingredients, packing materials and all other inventories and all office and other supplies (collectively, the "Inventory");

(e) to the extent assignable or transferrable, all governmental licenses, registrations, certificates of occupancy or other permits or approvals of any nature of Seller or any of its subsidiaries relating to the Business, including, any wine, beer or other alcoholic beverage license or permit (collectively, the "Permits");

(f) all rights of Seller under any trademark, service mark, trade dress, trade name, or other name or slogan embodying business goodwill or indications of origin relating to the Business, whether registered or unregistered, and any similar or equivalent rights to the foregoing anywhere in the world, and any applications therefore (collectively, the "Marks");

(g) all (A) copyrights in writings, designs, mask works or other works, applications or registrations for the foregoing and all rights related thereto, (B) domain names and websites, and (C) technologies, methods, data bases, trade secrets, know-how, manufacturing and other processes, inventions, formulae, recipes, process sheets and mixing instructions and other intellectual property owned or used by Seller in the Business or under development for use in the Business (collectively, with the Marks, the "Intellectual Property");

(h) all computer hardware, software (including documentation and related object and source codes), software licenses (to the extent assignable or transferable) and peripherals of Seller relating to or used in the Business; being the physical copies of software, not intellectual property rights associated with software;

(i) all of Seller's blueprints, specifications, plats, maps, surveys, building and machinery diagrams, copies of accounting and financial records prior to the Closing Date, maintenance and production records, recipe books, operating and policy manuals, personnel and labor relations records, environmental records and reports, customer lists, records relating to suppliers, and marketing brochures. Notwithstanding the foregoing, Seller shall be entitled to make copies of any records conveyed to Purchaser that Seller

2

reasonably deems necessary.  Seller shall be entitled to retain its income tax records, corporate minute, stock record and other corporate organizational or governance documents;

(j)    all claims (including claims for past infringement or misappropriation of the Intellectual Property of Seller) and causes of action of Seller against other Persons relating to the Business or the Assets (regardless of whether or not such claims and causes of action have been or could have been asserted by Seller), and all rights under express or implied warranties, representations and guaranties relating to the Assets (to the extent assignable or transferable);

(k)    all telephone numbers, facsimile numbers, telephone listings and email accounts of Seller;

(l)    all cash, bank deposits and cash equivalents, including the "cash bank" in Seller's restaurant on the Closing Date (as hereinafter defined) and all cash in the segregated bank accounts opened by Purchaser under Seller's name pursuant to the terms of the Existing Management Agreement;

(m)    all proceeds of insurance arising from damage to, destruction of or loss relating to the Assets or covering claims, if any, for which Purchaser may have successor liability, provided, however, with respect to any successor liability claims, such proceeds shall be used solely either to satisfy such liability directly or, if Purchaser or the Seller have already satisfied such a claim, to reimburse Purchaser or the Seller to the extent of such satisfaction; and

(n)    all goodwill of the Business, and all accounts receivable, credit card charges, trade accounts and other amounts owed to the Seller relating to, or arising in connection with the operation and conduct of, the Business (including overdue accounts receivable and all accounts receivable that have been billed by Seller in advance for services or products that have not yet been provided prior to the Closing Date) and any other rights of the Seller to payment from third parties and the full benefit of all security for such accounts or rights to payment, including, together with any and all proceeds of any of the foregoing (collectively, the "Accounts Receivable").

1.1.2    Excluded Assets.  Notwithstanding the foregoing, the Assets shall not include any of the following (the "Excluded Assets"):

(a) Seller's certificate of formation, minute books, stock ledger or other corporate organizational and governance documents;

(b) Seller's books of account and other records required by law to be retained by Seller including, without limitation, tax returns, taxpayer and other identification numbers, financial statements and corporate or other entity filings; provided, that Purchaser shall have the right to make copies of any portions of such retained books and records to the extent that such portions relate to the Business or any of the Assets;

(c) the rights which accrue or will accrue to Seller under this Agreement;

3

(d) all of Seller's rights, privileges and claims under all contracts of Seller relating to the Business or the Assets;

(e) any assets relating to any "employee benefit plans" as defined by Section 3(3) of the ERISA, all specified fringe benefit plans as defined in Section 6039D of the Internal Revenue Code, as amended (the "Code"), and all other bonus, incentive compensation, deferred compensation, profit sharing, stock option, stock appreciation right, stock bonus, stock purchase, employee stock ownership, savings, severance, supplemental unemployment, layoff, salary continuation, retirement, pension, health, life insurance, dental, disability, accident, group insurance, vacation, holiday, sick leave, fringe benefit or welfare plan, and any other employee compensation or benefit plan, agreement, policy, practice, commitment, contract, or understanding (whether qualified or nonqualified, currently effective or terminated, written or unwritten), and any trust, escrow or other agreement related thereto, which currently is sponsored, established, maintained or contributed to or required to be contributed by Seller or for which Seller has any liability, contingent or otherwise (collectively, the "Employee Benefit Plans");

(f) any and all membership interests in the Seller;

(g) that certain lease agreement for the Premises, which has been deemed rejected by virtue of Seller not assuming or rejecting said lease within the first 120 days of the Petition Date (the "Lease Agreement"); and

(h) any rights, claims or causes of action arising under the Bankruptcy Code for the benefit of Seller or Seller's bankruptcy estate.

1.2   Excluded Liabilities.  Purchaser shall not assume, pay, discharge, perform or in any way be responsible or liable for any liabilities or obligations of Seller whether fixed or unfixed, known or unknown, asserted or unasserted, including, any Tax liabilities.

ARTICLE II

PURCHASE PRICE; CLOSING

2.1   Purchase Price.  The purchase price (the "Purchase Price") shall be an amount equal to $1,000,000, plus the assumption of any operating losses and expenses funded by Purchaser under the Existing Management Agreement, other than any amounts funded by Purchaser for payment of rent to the owner of the Premises (the "Landlord"), which shall be credited against the Purchase Price.  On the Closing Date, Purchaser shall pay for the benefit of Seller, the cash portion of the Purchase Price less the Deposit (as hereinafter defined) in U.S. Dollars by check or wire transfer of immediately available funds as follows:

(a)    up to $300,000 shall be delivered to an account specified by the Landlord to satisfy a portion of Landlord's post-petition administrative claim, provided that such $300,000 shall be reduced dollar for dollar by any payment of rent funded by Purchaser to the Landlord under the Existing Management Agreement;

4

1375401-7

(b)    up to $491,754 shall be delivered to Seller's counsel to be released in full and complete satisfaction of the secured claim of the State of Nevada Department of Taxation; and

(c)    the balance shall be delivered to an account specified by the Seller.

2.2    Deposit.  Within three (3) business days following the Effective Date, Purchaser shall deliver to Seller's counsel, by check or wire transfer of immediately available funds to the bank account designated by Seller's counsel, an aggregate amount of FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) (hereinafter called the "Deposit").  The Deposit shall be credited against the amount to be paid by Purchaser to Seller at Closing as set forth in Section 2.1, upon entry of the Sale Order.  In the event this Agreement is terminated, Seller's counsel shall disburse the Deposit in the manner set forth in Section 6.1(b) herein without any further action from the parties hereto.

2.3    Closing.  The closing (the "Closing" or "Closing Date") of the sale and purchase of the Assets shall take place within five (5) days of satisfaction or waiver of the conditions set forth in Article V of this Agreement at such place as the parties may mutually agree.

2.4    Items to be Delivered at Closing.  At the Closing and subject to the terms and conditions here contained:

(a) Seller shall deliver (or cause to be delivered) to Purchaser the following:

(i)    a duly executed bill of sale transferring to Purchaser the Assets, in form and substance reasonably acceptable to Purchaser;

(ii)    duly executed assignments of the Intellectual Property, including the Marks, to Purchaser, in forms suitable for recording in the United States Patent and Trademark Office (as applicable);

(iii)    all of the information, files, records, data, plans and recorded knowledge belonging to Seller which are part of the Assets;

(iv)    final copies of the Disclosure Schedules;

(v)    copies of all consents required to be obtained, and all notices to third parties given, by the Seller as of the Closing Date regarding the transfer of the Assets;

(vi)    to the extent required to ensure the uninterrupted and continued service and sale of alcoholic beverages on the Premises after the Closing Date, duly executed management and concession agreements or such other agreements by and between Purchaser and Seller in form and substance reasonably acceptable to Purchaser;

1375401-7

(vii)    all other instruments of conveyance and transfer, in form and substance reasonably acceptable to Purchaser, as may be necessary to convey the Assets to Purchaser.

Simultaneously with such delivery, Seller shall take all such steps as may be reasonably required and at no cost to Seller to put Purchaser in actual possession and operating control of the Assets.

(b) Purchaser shall deliver (or cause to be delivered) to Seller the following:

(i)    the Purchase Price in accordance with Section 2.1 hereof;

(ii)    to the extent required to ensure the uninterrupted and continued service and sale of alcoholic beverages on the Premises after the Closing Date, a duly executed management and concession agreements or such other agreements by and between Purchaser and Seller in form and substance reasonably acceptable to Purchaser; and

(iii)    all other instruments of conveyance and transfer as may reasonably be requested by Seller to carry out the purposes or intent of this Agreement.

ARTICLE III
REPRESENTATIONS AND WARRANTIES

3.1    <u>Representations and Warranties of Seller</u>.  Seller hereby represents and warrants to Purchaser as follows:

3.1.1    <u>Organization and Qualification</u>.    Seller is a limited liability company duly organized and validly existing under the laws of the State of Nevada. Seller has the requisite power and authority necessary to own, lease and operate the property it purports to own, lease or operate and to carry on the Business as it is now being conducted.

3.1.2    <u>Authority Relative to This Agreement</u>.  Subject to the entry of the Sale Order, Seller has all necessary power and authority to execute and deliver this Agreement and to perform its obligations hereunder and to consummate the transactions contemplated hereby.  Subject to the entry of the Sale Order, the execution and delivery of this Agreement by Seller and the consummation by Seller of the transactions contemplated hereby have been duly and validly authorized by Seller, and no other proceedings on the part of Seller are necessary to authorize this Agreement or to consummate the transactions contemplated hereby.  A majority of the voting Members of Seller has approved this Agreement and the transactions contemplated hereby and declared the advisability thereof. Subject to the entry of the Sale Order, this Agreement has been duly and validly executed and delivered by Seller and, assuming the due authorization, execution and delivery by Purchaser, as applicable, constitutes a legal, valid and binding obligation of Seller enforceable in accordance with its terms.

6

### 3.1.3    No Conflict; Required Filings and Consents.

(a)    The execution and delivery of this Agreement by Seller does not, and the performance of this Agreement by Seller will not, violate the operating agreement of Seller.

(b)    The execution and delivery of this Agreement by Seller does not, and the performance of this Agreement by Seller will not, require any consent, approval, authorization or permit of, or filing with or notification to, any national, federal, state, provincial or local governmental, regulatory or administrative authority, agency, commission, court, tribunal, arbitral body or self-regulated entity, domestic or foreign (each, a "Governmental Authority") or any other Person, except for (i) approvals under applicable alcohol and beverage laws and regulations, and (ii) the consent of the Bankruptcy Court.

(c)    Seller is not a "foreign person" within the meaning of Sections 1445 and 7701 of the Code, i.e., Seller is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as such terms are defined in the Code and Income Tax Regulations);

### 3.1.4    Absence of Litigation.    Except for the Bankruptcy Case or as set forth on Schedule 3.14 of the Disclosure Schedules, there are no claims, actions, suits, proceedings or investigations pending or, to the knowledge of Seller, threatened against Seller, whether at law or in equity, whether civil or criminal in nature or by or before any arbitrator or Governmental Authority, domestic or foreign, nor are there, to Seller's knowledge, any investigations or reviews by any Governmental Authority pending or threatened against, relating to or affecting the Business.

### 3.1.5    Brokers.    No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement.

### 3.1.6    Title to Properties.    Subject to the entry of the Sale Order, Seller has good and marketable title to all of the Assets, free and clear of all Liens except for Taxes, assessments, governmental charges or levies which are not yet due and payable.

### 3.1.7    Assets.

(a)    No Person other than Seller owns the Assets conveyed hereby, situated on the Premises or otherwise used in the operation of the Business other than computer software which Seller maintains the right to use pursuant to valid software licenses and equipment which is leased or loaned.

(b)    The Assets (including, without limitation, all heating, air conditioning, ventilation, roofing, plumbing, cooking equipment, foundation system or structural integrity) are in working order and except inconsequential items calling for repair due to normal wear and tear.

7

3.1.8    <u>Real Property</u>.    The Premises constitutes all of the real property leased by Seller and used in connection with the Business.  Seller represents that the Lease Agreement has been terminated and has been deemed rejected by virtue of Seller not assuming or rejecting said lease within the first 120 days of the Petition Date.  Landlord has agreed to accept $300,000 for its post-petition administrative claim in excess of $1,300,000, as a condition to its consent to the transactions contemplated by this Agreement and the negotiation of a new lease with the Purchaser.

3.1.9    <u>Intellectual Property</u>.

(a)    Schedule 3.1.9(a) of the Disclosure Schedules sets forth a list of all Intellectual Property owned or licensed by Seller and used or useful in connection with or related to the Business.

(b)    To Seller's knowledge, Seller owns legally enforceable rights to use, any and all Intellectual Property used in the Business of Seller as currently conducted.

(c)    To Seller's knowledge, there are no conflicts with or infringements of any Intellectual Property by any third party and the conduct of the Business as currently conducted does not conflict with or infringe upon any proprietary intellectual property right of a third party.

(d)    Subject to licensing agreements, Seller owns or has the right to use all computer software currently used in the Business.

(e)    To Seller's knowledge, Seller has a valid and binding oral agreement to use the name "Beso" and all other related Intellectual Property currently used or useful in the operation of the Business and owned by a Person other than Seller.  Except as set forth on Schedule 3.1.9(e) of the Disclosure Schedules, Seller is not under an agreement to limit the use of the Business' name or trade dress in any manner whatsoever nor is Seller aware of any limitation of use of the name, trade dress or other Intellectual Property.

3.1.10    <u>Permits</u>.    (a) To Seller's knowledge, Seller holds and is in compliance with all Permits required under applicable law or regulation for the operation of the Business; (b) To Seller's knowledge, Seller is not in violation of any Permits; and (c) Seller has not received notice of any proceedings or investigations relating to the revocation or modification of any such Permits.

3.1.11    <u>Tax Matters</u>.    Seller has filed (after taking into account any extensions to file) all Tax returns required to be filed by it prior to the Closing Date except for the current year.  Except for Taxes owed to the State of Nevada Department of Taxation in the amount of $539,518, of which $491,754 is a secured priority claim that shall be paid at Closing with a portion of the Purchase Price, Seller has paid and discharged or caused to be paid and discharged all Taxes reflected on such Tax returns which have become due and payable by it (except Taxes being contested in good faith and reserved against).  All Taxes that Seller is or was required to withhold or collect have been duly withheld or collected and, to the extent required, have been paid to the proper

8

Governmental Authority or other Person. As of the date of this Agreement, there are no pending or, to the knowledge of Seller, threatened in writing audits, examinations, investigations or other proceedings with respect to Taxes relating to the Business. For purposes of this Agreement, "Tax" or "Taxes" means (i) all federal, state, local or non-U.S. taxes, duties, imposts or other similar assessments imposed by any Governmental Authority, and (ii) all interest and penalties related to the foregoing.

        3.1.12   <u>Compliance with Applicable Laws</u>. Seller has not received notice of any proceedings relating to the violation of any laws, ordinances, rules and regulations of any applicable Governmental Authority, or any agency, body or subdivision thereof, including without limitation The Americans With Disabilities Act, bearing on the construction or operation of the Business.

        3.1.13   <u>Employee and Labor Matters</u>. (a) Seller has (i) complied in all material respects with all applicable federal, state, foreign, and local laws, rules, and regulations relating to the employment of labor (including provisions thereof relating to wages, hours, equal opportunity, immigration, collective bargaining, the classification of employees and consultants, and the payment of social security and other Taxes) and employment practices (including terms and conditions of employment, wages and hours), (ii ) is not liable for any arrears of wages or any Taxes or any penalty for failure to comply with any applicable federal, state, foreign, and local laws, rules, and regulations relating to the employment of labor, and (iii) is not liable for any payment to any trust or other fund or to any Governmental Authority with respect to unemployment compensation benefits, social security, or other benefits for employees or former employees; (b) Seller is not a party to any collective bargaining agreement or similar agreement; (c) there are no unfair labor practice proceedings, complaints under OSHA, or any other state or federal regulation governing employment practices and work environment for employees pending against Seller, or to the best of its knowledge, threatened in writing against Seller, and no grievance or arbitration proceeding arising out of or under any collective bargaining agreement or otherwise is pending against Seller; (d) no chef or manager has given Seller written notice of any intent to terminate his or her employment with Seller; (e) to the knowledge of Seller, all employees of Seller are legally qualified to work in the United States by virtue of being United States citizens, documented resident aliens (i.e., "green card" holders) or holders of validly issued employment visas or other applicable Permits; (f) all employees of the Seller are employed on an "at-will" (or equivalent) basis such that their employment may be terminated at any time and for any reason (including no reason) without notice or compensation paid in lieu thereof; (g) no employee is entitled to receive severance pay or other benefits from Seller following the termination of such employee's employment. Seller acknowledges that Purchaser is buying the Assets and not guaranteeing employment to any employees.

        3.1.14   <u>Gift Certificates</u>. No discount coupons, complimentary coupons, charitable coupons or other complimentary food and beverage entitlements or paid gift cards or gift certificates are outstanding with respect to the Business other than as reflected on Schedule 3.1.14 of the Disclosure Schedules.

9

3.2     <u>Representations and Warranties of Purchaser</u>.  Purchaser represents and warrants to Seller as follows:

      3.2.1     <u>Organization and Qualification</u>.  Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.

      3.2.2     <u>Authority Relative to This Agreement</u>.  Purchaser has all necessary corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement by Purchaser and the consummation by Purchaser of the transactions contemplated hereby and thereby have been duly and validly authorized by all necessary corporate action on the part of Purchaser, and no other corporate proceedings on the part of Purchaser are necessary to authorize this Agreement or to consummate the transactions contemplated hereby or thereby.  This Agreement has been duly and validly executed and delivered by Purchaser and, assuming the due authorization, execution and delivery by Seller, constitutes a legal, valid and binding obligation of Purchaser.

      3.2.3     <u>No Conflict, Required Filings and Consents</u>.

      (a)     The execution and delivery of this Agreement by Purchaser does not, and the performance of this Agreement by Purchaser will not, (i) conflict with or violate the organizational documents of Purchaser, (ii) conflict with or violate any law, rule, regulation, order, judgment or decree applicable to Purchaser, or (iii) result in any breach of or constitute a default (or an event that with notice or lapse of time or both would become a default) under, or modification in a manner materially adverse to Purchaser.

      (b)     The execution and delivery of this Agreement by Purchaser does not, and the performance of this Agreement by Purchaser will not, require any consent, approval, authorization or permit of, or filing with or notification to, any Governmental Authority.

      3.2.4     <u>Brokers</u>.  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Purchaser.

      3.2.5     <u>Financing</u>.  Purchaser has sufficient liquid assets on hand to pay the Purchase Price and otherwise consummate the transactions contemplated by this Agreement.

ARTICLE IV

ADDITIONAL AGREEMENTS

4.1     <u>Bankruptcy Matters</u>.

      (a)     <u>Motions</u>.  Seller shall file with the Bankruptcy Court, promptly filing the date hereof, a motion or motions (the "<u>Motion</u>") seeking the Bankruptcy Court's approval

10

of the Sale Order, in form and substance acceptable to Purchaser. Seller shall affix a true and complete copy of this Agreement to the Motion filed with the Bankruptcy Court. The Motion shall request, among other things, pursuant to, inter alia, Bankruptcy Code Sections 105, 365(b), (f), (k), (m) and (n), 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014, the entry of the Sale Order by no later than September 28, 2011 and the waiver of the fourteen (14) day stay periods under Fed.R.Bankr. P. 6004(h) and 6006(d).

(b)    Procedure. To the extent practicable under the circumstances, Seller shall provide Purchaser with drafts of any and all pleadings and proposed orders to be filed or submitted in connection with this Agreement for Purchaser's prior review and comment and shall cooperate with Purchaser to make reasonable changes.

4.2    Termination Fee. Notwithstanding anything contained herein to the contrary, in the event that Seller enters into an Alternative Transaction (as defined in Section 6.1), the Existing Management Agreement shall also terminate automatically and immediately without any action or notice by either the Seller to Purchaser, or Purchaser to the Seller. As provided in the Existing Management Agreement, within two (2) business days of the Closing of an Alternative Transaction, Seller shall pay Purchaser, in addition to all other obligations pursuant to this Agreement and the Existing Management Agreement, an amount equal to all operating losses and expenses funded by Purchaser under the Existing Management Agreement (the "Termination Fee"). In the event that the Termination Fee is not paid by Seller pursuant to the terms in this Section 4.2, such portion that is not paid by Seller shall constitute an allowed super-priority administrative expense claim under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, with priority over all other administrative expense claims.

4.3    Employee Benefit Plans. Seller shall take such actions as may be appropriate with respect to any Employee Benefit Plan so that Purchaser shall not be obligated to any employee of Seller, whether or not hired by Purchaser, with respect to and under such Employee Benefit Plans.

4.4    No Alternative Transactions. Purchaser understands and acknowledges that the Seller is a debtor in possession in a Chapter 11 case and has a fiduciary obligation to the bankruptcy estate and to the creditors of that estate to maximize the value of the bankruptcy estate. The Seller will cooperate with prospective buyers. Notwithstanding the foregoing, Seller shall request any potential buyer to deposit in Seller's counsel's trust account a minimum good faith deposit of $50,000.

ARTICLE V

CONDITIONS PRECEDENT TO THE CLOSING

5.1    Conditions Precedent to Purchaser's Obligations. The obligations on the part of Purchaser to consummate the transactions to be consummated at the Closing pursuant to this Agreement are subject to the satisfaction at or prior to the Closing of each of the conditions set forth in this Section 5.1, any of which may be waived by Purchaser in its sole discretion.

5.1.1    Representations and Warranties True as of Closing Date. The representations and warranties of Seller contained in this Agreement or in any list,

11

certificate or document delivered by Seller to Purchaser pursuant to the provisions hereof shall be true in all material respects on the Closing Date with the same effect as though such representations and warranties were made as of such date.

5.1.2    Compliance with this Agreement.    Seller shall have performed and complied with, in all material respects, all agreements and conditions required by this Agreement to be performed or complied with prior to or at the Closing, including, without limitation, delivery to Purchaser of all of the items to be delivered by Seller pursuant to Section 2.4(a) of this Agreement.

5.1.3    Bankruptcy Court Approval.    The Sale Order shall have been entered in a form acceptable to Purchaser on or prior to September 28, 2011 and shall not be subject to a stay. The Bankruptcy Court shall have provided such other relief as may be necessary or appropriate to allow the consummation of the transactions contemplated by this Agreement, including a waiver of the fourteen (14) day stay periods under Fed.R.Bankr. P. 6004(h) and 6006(d).

5.1.4    Consents.    All consents required to be obtained, if any, and all notices to third parties given, by the Seller as of the Closing Date regarding the transfer of the Assets, shall have been duly obtained, delivered, made or given and shall be in full force and effect.

5.1.5    Stockholders' Agreement.    Purchaser shall have caused one of its affiliates to enter into a stockholders' agreement (the "Stockholders' Agreement") with Eva Longoria and Jonas Lowrance, the stockholders of a newly formed corporation ("Newco"). Purchaser shall also cause such affiliate to enter into each of the agreements contemplated under the Stockholders' Agreement, including, without limitation, a new management agreement with the Purchaser which will replace the Existing Management Agreement and grant Newco the right to use the Assets.

5.1.6    License Agreement.    Purchaser and/or Newco shall have entered into a license agreement, in form and substance reasonably acceptable to the Purchaser, granting the Purchaser the right to use the name "Beso" and all other related Intellectual Property currently used or useful in the operation of the Business and owned by a Person other than Seller.

5.1.7    Lease Agreement.    Newco shall have entered into a new lease agreement for the Premises with the Landlord on terms and conditions satisfactory to Purchaser.

5.1.8    No Material Adverse Effect.    There shall not have occurred an event or failure to act causing a material adverse change on the Business.

5.1.9    Liquor/Permits.    Purchaser and/or Newco shall have obtained all necessary Permits to operate the Business, including providing for the sale of alcoholic beverages. Notwithstanding the foregoing, Purchaser may agree to enter into standard forms of management and concession agreements or such other agreements with Seller to

12

ensure the uninterrupted and continued service and sale of alcoholic beverages, until Purchaser can obtain a permanent liquor license.

5.2     Conditions Precedent to the Obligations of Seller.  The obligations on the part of Seller to consummate the transactions to be consummated by it at the Closing pursuant to this Agreement are subject to the satisfaction at or prior to the Closing of each of the conditions set forth in this Section 5.2, any of which may be waived by Seller in its sole discretion.

5.2.1     Representation and Warranties True as of the Closing Date.  The representations and warranties of Purchaser contained in this Agreement or in any list, certificate or document delivered by Purchaser to Seller pursuant to the provisions hereof shall be true in all material respects on the Closing Date with the same effect as though such representations and warranties were made as of such date.

5.2.2     Compliance with this Agreement.  Purchaser shall have performed and complied with, in all material respects, all agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing including, without limitation, delivery to Seller of all of the items to be delivered by Purchaser pursuant to Section 2.4(b) of this Agreement.

5.2.3     Lease Agreement.  Newco shall have entered into a new lease agreement for the Premises with the Landlord on terms and conditions satisfactory to Purchaser.

5.2.4     Bankruptcy Court Approval.  The Sale Order shall have been entered in a form acceptable to Seller and shall not be subject to a stay and the Bankruptcy Court shall have provided such other relief as may be necessary or appropriate to allow the consummation of the transactions contemplated by this Agreement.

ARTICLE VI

TERMINATION AND DEFAULT

6.1     Termination and Default.

(a)     This Agreement may be terminated and the transactions contemplated by this Agreement abandoned at any time prior to the Closing:

(i)     By mutual written consent of the parties;

(ii)     By either Seller or Purchaser, if the Closing does not occur on or prior to October 14, 2011; provided, however, that the right to terminate this Agreement under this clause (ii) shall not be available to any party whose failure to fulfill any obligation under this Agreement has been the cause of, or resulted in, the failure of the Closing to occur on or before such date;

(iii)     By the Seller, if there has been a violation or breach by Purchaser of any material representation or warranty contained in this Agreement that (x)

13

has rendered the satisfaction of any condition to the obligations of Seller impossible or is not curable or, if curable, has not been cured within ten (10) days following receipt by Purchaser of written notice of such breach from Seller, and (y) has not been waived by Seller;

(iv)    By Purchaser, if there has been a violation or breach by Seller of any material representation or warranty contained in this Agreement that (x) has rendered the satisfaction of any condition to the obligations of Purchaser impossible or is not curable or, if curable, has not been cured within ten (10) days following receipt by Seller of written notice of such breach from Purchaser, and (y) has not been waived by Purchaser;

(v)    automatically and without any action or notice by either the Seller to Purchaser, or Purchaser to the Seller, immediately upon:

(A) the issuance of a final and nonappealable order, decree, or ruling or any other action by a Governmental Authority to restrain, enjoin or otherwise prohibit the transfer of the Assets contemplated hereby;

(B) approval by the Bankruptcy Court of any sale, transfer, lease or other disposition, directly or indirectly, including through an asset sale, stock sale, merger, recapitalization, reorganization or other similar transaction, of any Assets or any substantial portion of the Business (or any agreement or understanding to do any of the foregoing) pursuant to any transaction or series of transactions to a party or parties other than Purchaser within twelve months from the date hereof (an "Alternative Transaction"); and

(C) Seller's acceptance of an Alternative Transaction;

(vi)    by Purchaser, if there is a material breach or termination of the Existing Management Agreement; or

(vii)    by Purchaser if the Bankruptcy Court has not entered the Sale Order by September 28, 2011 (or such later date as Purchaser may have designated in writing to Seller).

(b)    In the event of termination pursuant to Section 6.1(a), this Agreement shall become null and void and have no effect and no party shall have any liability to any other (other than pursuant to the provisions of this Article VI, Section 4.2, Section 7.4, and any other provisions of this Agreement that expressly survive termination), provided, however, that nothing in this Section 6.1(b) shall relieve Purchaser or Seller of any liability for a breach of this Agreement prior to the date of termination. In the event of termination pursuant to Section 6.1(a)(iii) or (iv), the non-breaching party shall be entitled to receive the full amount of the Deposit. In the event of termination pursuant to Section 6.1(a)(i), (ii), (v), (vi) or (vii), Purchaser shall be entitled to recover the full amount of the Deposit. In addition, in the event Seller terminates this Agreement

14

pursuant to Section 6.1(v)(B) or (C), Seller shall pay Purchaser the Termination Fee pursuant to Section 4.2.

## ARTICLE VII

## MISCELLANEOUS

7.1  <u>Survival</u>.  No representations, warranties, covenants and agreements of Seller and Purchaser made in this Agreement, shall survive the Closing Date except where, and only to the extent that, the terms of any such covenant or agreement expressly provide for obligations extending after the Closing, or as otherwise expressly provided in this Agreement.

7.2  <u>Payments Received</u>.  Seller agrees that after the Closing Date, it will hold and will promptly transfer and deliver to Purchaser, from time to time as and when received by them, any cash, checks with appropriate endorsements (using their best efforts not to convert such checks into cash), or other property that they may receive on or after the Closing Date which properly belongs to Purchaser and will account to Purchaser for all such receipts.

7.3  <u>Sales, Transfer and Documentary Taxes, etc.</u>  All excise, sales, value added, use, registration, stamp, transfer and similar Taxes, levies, charges and fees incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by Seller, whether imposed by law on Seller or Purchaser, and Seller shall indemnify, reimburse and hold harmless Purchaser in respect of the liability for payment of or failure to pay any such Taxes, levies, charges or fees.  Purchaser and Seller shall cooperate in providing each other appropriate resale exemption certificates and other appropriate Tax documentation.

7.4  <u>Expenses</u>.  Each party shall bear its own expenses, including the fees and expenses of any attorneys or accountants, incurred in connection with this Agreement and the transactions contemplated hereby

7.5  <u>Contents of Agreement; Amendments</u>.  This Agreement sets forth the entire understanding of the parties hereto with respect to the transactions contemplated hereby.  Any and all previous agreements and understandings between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement.  This Agreement shall not be amended or modified except by written instrument duly executed by each of the parties hereto.

7.6  <u>Waiver</u>.  Any term or provision of this Agreement may be waived at any time by the party entitled to the benefit thereof by a written instrument duly executed by such party.

7.7  <u>Notices</u>.  All notices required or permitted to be given hereunder shall be in writing and may be delivered by hand, by facsimile, by nationally recognized private courier, or by United States mail.  Notices delivered by mail shall be deemed given three (3) business days after being deposited in the United States mail, postage prepaid, registered or certified mail.  Notices delivered by hand, by facsimile, or by nationally recognized private carrier shall be deemed given on the date of receipt.  All notices shall be addressed as follows:

| (a) | As to Seller: | Beso, LLC<br>c/o Beso Management, LLC<br>17721 Rogers Ranch Parkway, Ste. 225<br>San Antonio, Texas 78258<br>Attention: William M. Braden, Manager<br>Telephone: (210) 479-7676 |
|---|---|---|
| | with copy (which shall not constitute notice) to: | Lenard E. Schwartzer, Esq.<br>Schwartzer & McPherson Law Firm<br>2850 South Jones Boulevard, Suite 1<br>Las Vegas, Nevada 89146<br>Telephone: (702) 228-7590 |
| (b) | As to Purchaser: | CHLN, INC.<br>1510 West Loop South<br>Houston, Texas 77027<br>Telephone: (713) 386-7000<br>Telecopy: (713) 386-7070<br>Attention: Steven L. Scheinthal |
| | with copy (which shall not constitute notice) to: | Olshan Grundman Frome Rosenzweig & Wolosky LLP<br>Park Avenue Tower<br>65 East 55th Street<br>New York, NY 10022-1106<br>Telephone: (212) 451-2216<br>Telecopy: (212) 451-2222<br>Attention: Adam Friedman, Esq. |

or to such other address and to the attention of such other Person as the party to whom such notice is to be given may have theretofore designated in a notice to the other party hereto.

7.8    Governing Law.    This Agreement shall be governed by and interpreted and enforced in accordance with the laws of the State of Nevada without regard to its provisions concerning conflict of laws, except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law.    For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.    After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, any state or federal court having competent jurisdiction in Nevada.

7.9    No Benefit to Others.    The representations, warranties, covenants and agreements contained in this Agreement are for the sole benefit of the parties hereto and they shall not be construed as conferring any rights on any other Persons.

16

1375401-7

7.10    Headings, Gender and "Person".    All section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement.    Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires.    Any reference to a "Person" herein shall include an individual, firm, corporation, partnership, trust, governmental authority or body, association, unincorporated organization or any other entity.

7.11    Schedules and Exhibits.    All schedules and exhibits referred to herein are intended to be and hereby are specifically made a part of this Agreement.

7.12    Severability.    Any provision of this Agreement which is invalid or unenforceable in any jurisdiction shall be ineffective to the extent of such invalidity or unenforceability, and any such invalidity or unenforceability shall not invalidate or render unenforceable the remaining provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

7.13    Counterparts; Facsimile Signatures.    This Agreement may be executed in any number of counterparts and any party hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.    This Agreement shall become binding when one or more counterparts taken together shall have been executed and delivered by the parties.    It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.    The parties hereto agree that facsimile transmission of original signatures shall constitute and be accepted as original signatures.

7.14    No Strict Construction.    The language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent and agreement, and no rule of strict construction shall be applied against any party.

7.15    Future Assurances.    Seller and Purchaser hereby agree to execute and deliver, from time to time, at the reasonable request of Purchaser or Seller, as the case may be, and without further consideration, such additional instruments of conveyance and transfer, and to take such other action as may be reasonably required to convey, assign, transfer or deliver the Business and/or Assets to Purchaser or as are reasonably necessary for the proper consummation of this Agreement.

[Signature Page Follows]

1375401-7

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the Effective Date.

**SELLER**

BESO, LLC,
a Nevada limited liability company

By: Beso Management, LLC

By: _____
Name: William M. Braden
Title:  Manager


**PURCHASER**

CHLN, INC.,
a Delaware corporation

By: _____
Name: Steven L. Scheinthal
Title:  Vice President

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the Effective Date.

**SELLER**

BESO, LLC,
a Nevada limited liability company

By: Beso Management, LLC

By: _____
Name:  William M. Braden
Title:   Manager

**PURCHASER**

CHLN, INC.,
a Delaware corporation

By: _____
Name:  Steven L. Scheinthal
Title:   Vice President

# EXHIBIT "D"

1
2
3
4
5
6 Lenard E. Schwartzer
Nevada Bar No. 0399
7 Emelia L. Allen
Nevada Bar No. 11898
8 Schwartzer & McPherson Law Firm
2850 South Jones Boulevard, Suite 1
9 Las Vegas, Nevada  89146-5308
10 Telephone:  (702) 228-7590
Facsimile:  (702) 892-0122
11 E-Mail:  bkfilings@s-mlaw.com
12 *Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. BK-S-11-10202-MKN |
| **BESO LLC,** | Chapter 11 |
| Debtor. | **ORDER AUTHORIZING AND APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES TO CHLN, INC. AND GRANTING RELATED RELIEF** |
| | Date:   September 26, 2011 |
| | Time:  1:30 p.m. |

**UPON** the Motion For Order (1) Authorizing A Private Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Any And All Liens, Claims, Encumbrances, And Other Interests; (2) Approving The Asset Purchase Agreement In Connection Therewith; and (3) Granting Related Relief dated August __, 2011 (Docket No.___, the "Sale Motion"), of Beso LLC., the above captioned debtor and debtor-in-possession in the above-captioned Chapter 11

1

Debtor's Motion to Approve Management Agreement

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    case (the "Debtor"), for entry of an order or orders approving the private sale of substantially all of

2    the Debtor's assets to CHLN, Inc. or its designee (the "Purchaser") and for related relief; and it

3    appearing that the relief requested in the Sale Motion is in the best interests of the Debtor's estates,

4    its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this

5    matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that the Sale Motion is a core

6    proceedings pursuant to 28 U.S.C. § 157(b)(2); and adequate notice of the Sale Motion and

7    opportunity for objection having been given, and all objections to the relief requested in the Sale

8    Motion having been overruled, resolved by consent as specified herein; and this Court having

9    heard statements of counsel and the evidence presented in support of the relief requested by the

10   Debtor in the Sale Motion at a hearing before this Court on September 26, 2011 (the "Sale

11   Hearing"); and it appearing that no other notice need be given; and it further appearing that the

12   legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for

13   the relief granted herein; and after due deliberation and sufficient cause therefor:

14         THE COURT HEREBY FINDS AND CONCLUDES:

15         A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

16   This is a core proceeding under 28 U.S.C. Section 157(b)(2)(A), (M), (N) and (O).

17         B.    Venue of this proceeding in this District and this Court is proper under 28 U.S.C.

18   §§ 1408 and 1409.

19         C.    Adequate notice of the Sale Motion and the proposed sale of assets have been given

20   pursuant to Bankruptcy Rules 2002, 6004 and 6006. The service of such notices was good,

21   sufficient and appropriate under the circumstances.

22         D.    The Debtor has articulated good and sufficient reasons for this Court to grant the

23   relief requested in the Sale Motion, including, without limitation, adequate business justification

24   for the sale of the Debtor's assets outside a plan of reorganization. Emergent circumstances and

25   sound business reasons exist to support the Debtor's business judgment to sell the assets by private

26   sale as is authorized under Bankruptcy Rule 6004(f)(1).

27         E.    The Debtor's determination that the Asset Purchase Agreement attached to the Sale

28   Motion (the "APA") constitutes the highest and best offer for the Assets constitutes a valid and

2

1   sound exercise of the Debtor's business judgment.

2       F.    The consideration provided by the Purchaser pursuant to the APA is fair and

3   adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy

4   Code and under the laws of the United States, any state, territory or possession thereof and the

5   District of Columbia.

6       G.    The Purchaser is purchasing the Assets in good faith and is a good faith buyer

7   within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full

8   protection of that provision, and otherwise has proceeded in good faith in all respects in

9   connection with this proceeding.

10      H.    The Purchaser is not a continuation of the Debtor or its estate.  The Purchaser is not

11  a successor to the Debtor or its estate and the sale does not amount to a consolidation, merger or

12  de facto merger of the Purchaser and the Debtor.

13      I.    The Debtor has full corporate power and authority to execute and deliver the APA

14  and all other documents contemplated thereby, and no further consents or approvals are required

15  for the Debtor to consummate the transactions contemplated by the APA, except as otherwise set

16  forth in the APA.

17      J.    The transfer of each of the purchased Assets to the Purchaser will be as of the

18  Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the

19  Purchaser with all right, title, and interest of the Debtor to the Assets free and clear of all liens,

20  claims, encumbrances and other interests accruing, arising or relating thereto any time prior to the

21  Closing Date.

22      K.    The Purchaser would not have entered into the APA and would not consummate

23  the transactions contemplated thereby if the sale of the Assets to the Purchaser were not free and

24  clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever, or if

25  the Purchaser would, or in the future could be liable for any of such liens, claims, encumbrances

26  and other interests of any kind or nature.

27      L.    The Debtor may sell the Assets free and clear of all Liens against the Debtor, its

28  estates or any of the Assets because, in each case, one or more of the standards set forth in

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

3

1  section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

2          M.      Given all of the circumstances of this Chapter 11 Case and the adequacy and fair

3  value of the purchase price under the APA, the proposed private sale of the Assets to the Purchaser

4  pursuant to the APA (the "Sale") constitutes a reasonable and sound exercise of the Debtor's

5  business judgment and should be approved.

6          N.      The consummation of the Sale is legal, valid and properly authorized under all

7  applicable provisions of the Bankruptcy Code and Bankruptcy Rule, including, without limitation,

8  sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), Bankruptcy Rule 6004(f)(1) and all of

9  the applicable requirements of such sections have been complied with in respect of the transaction.

10         **BASED UPON THE FOREGOING FINDINGS, IT IS HEREBY, ORDERED, THAT**

11         1.      The findings set forth above and conclusions of law stated herein shall constitute

12  the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

13  applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact

14  later shall be determined to be a conclusion of law, it shall be so deemed.  To the extent any

15  conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

16         2.      All objections and responses concerning the Sale are resolved in accordance with

17  the terms of this Order as set forth in the record of the hearing and to the extent any such

18  objections were not otherwise withdrawn, waived or settled, they are hereby overruled and denied.

19         3.      The relief requested in the Sale Motion is granted and approved.

20

21         4.      The APA is hereby approved.

22         5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized,

23  empowered and directed to (a) consummate the Sale of the Assets to the Purchaser pursuant to and

24  in accordance with the terms and conditions of the APA, (b) close the sale as contemplated in the

25  APA and this Order, and (c) execute and deliver, perform under, consummate, implement and

26  close fully the APA, together with all additional instruments and documents that may be

27  reasonably necessary or desirable to implement the APA and the Sale, including any other

28  ancillary documents, or as may be reasonably necessary or appropriate to the performance of the

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

4

1    obligations as contemplated by the APA and such other ancillary documents.

2          6.    This Order shall be binding in all respects upon the Debtor, its estate, all creditors,

3    all holders of equity interests in any Debtor, all holders of any Claim(s)[1] (whether known or

4    unknown) against any Debtor, any holders of Liens against or on all or any portion of the Assets,

5    and any trustees, if any, subsequently appointed in any of the Debtor's Chapter 11 Case or upon a

6    conversion to Chapter 7 under the Bankruptcy Code of the Debtor's case.  This Order and the

7    APA shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser and their

8    respective successors and assigns.

9          7.    Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy

10    Code, the Debtor is authorized and directed to transfer to the Purchaser the Assets on the Closing

11    Date.  Effective upon the Closing, the Assets shall be owned by the Purchaser free and clear of all

12    Liens.  Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Assets shall

13    be free and clear of any and all Liens, including encumbrances (i) that purport to give to any party

14    a right or option to effect any forfeiture, modification, right of first refusal, or termination of the

15    Debtor's interests in the Assets, or any similar rights, (ii)  relating to taxes arising under or out of,

16    in connection with, or in any way relating to the operation of the Assets prior to the Closing, and

17    (iii) all debts arising in any way in connection with any agreements, acts, or failures to act, of any

18    of the Debtor (or any of the Debtor's predecessors or affiliates, members, officers, directors,

19    employees or other agents), Claims, obligations, liabilities, demands, guaranties, options, rights,

20    contractual or other commitments, indemnities, indemnity obligations and warranties relating to

21    any acts, omissions or circumstances arising prior to the Closing Date, including but not limited to

22    Claims otherwise arising under doctrines of successor liability or any Claims or Liens related to

23    any Excluded Assets.  All Liens shall attach solely to the proceeds of the Sale with the same

24    validity, priority, force and effect that they now have as against the Assets, subject to any claims

25    and defenses the Debtor and its estate may possess with respect thereto.

26    _____

27    [1] As defined in Section 101(5) of the Bankruptcy Code.

28

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

Debtor's Motion to Approve Management Agreement

8.      Except as expressly permitted or otherwise specifically provided by the APA or this Order, all Persons holding Liens or interests in all or any portion of the Assets arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property or the purchased Assets, such Persons' or entities' Liens in and to the Assets.  On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens or encumbrances on the Assets, if any, as provided for herein, as such Liens may have been recorded or may otherwise exist.  The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.  Upon consummation of the transactions set forth in the APA, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

9.      All Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the APA and this Order.

10.      All Persons that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser on the Closing Date.

11.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Liens of record.

12.      If any Person which has filed statements or other documents or agreements evidencing Liens on, interests in, all or any portion of the Assets shall not have delivered to the Debtor or Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

6

Debtor's Motion to Approve Management Agreement

SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1    documenting the release of all Liens which the Person or entity has or may assert with respect to

2    all or any portion of the Assets, the Debtor is hereby authorized and directed, and the Purchaser is

3    hereby authorized, to execute and file such statements, instruments, releases and other documents

4    on behalf of such Person or entity with respect to the Assets.

5       13.      This Order is and shall be binding upon and govern the acts of all Persons,

6    including, without limitation, all filing agents, filing officers, title agents, title companies,

7    recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

8    governmental departments, secretaries of state, federal and local officials, and all other Persons

9    who may be required by operation of law, the duties of their office, or contract, to accept, file,

10    register or otherwise record or release any documents or instruments, or who may be required to

11    report or insure any title or state of title in or to any lease; and each of the foregoing Persons is

12    hereby directed to accept for filing any and all of the documents and instruments necessary and

13    appropriate to consummate the transactions contemplated by the APA.

14       14.      To the extent any governmental license or permit is necessary for the operation of

15    the business is determined not to be assignable, the Purchaser, or its assignee or designee, shall

16    apply for an obtain any necessary license or permit and such licenses or permits of the Debtors

17    shall remain in place for the benefit of the Purchaser until new licenses and permits are obtained.

18       15.      The Debtors shall cooperate fully with and support Purchaser in executing such

19    applications and furnishing such documents as are necessary for Purchaser to transfer, obtain or

20    replace all liquor licenses and other permits used in the Business. All applicable state alcoholic

21    beverage control, law enforcement, and regulatory agencies shall not interrupt any of the Business

22    without first bringing the matter before this Court. Furthermore, the Business shall continue

23    operating under all existing liquor licenses and permits of the Debtors until such licenses and

24    permits have been changed to the name of Purchaser, including, but not limited to state alcoholic

25    beverage licenses, state food service licenses, local occupations licenses, and any other licenses or

26    permits needed to operate the Business with no interruption of the Business.

27       16.      Effective upon the Closing Date and except as otherwise provided by stipulations

28    filed with or announced to this Court with respect to a specific matter, all Persons and entities are

Debtor's Motion to Approve Management Agreement

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

1  forever prohibited and permanently enjoined from commencing or continuing in any manner any

2  action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or

3  other proceeding against the Purchaser, its successors and assigns, or the Assets, with respect to

4  any (a) Liens arising under, out of, in connection with or in any way relating to the Debtor, the

5  Purchaser, the Assets, or the operation of the Assets prior to the Closing of the Sale, or

6  (b) successor liability, including, without limitation, the following actions: (i) commencing or

7  continuing in any manner any action or other proceeding against the Purchaser, ·its successors or

8  assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any

9  judgment, award, decree or order against the Purchaser, its successors, assets or properties;

10  (iii) creating, perfecting or enforcing any Liens against the Purchaser, its successors or assigns,

11  assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind

12  against any obligation due the Purchaser or its successors or assigns; (v) commencing or

13  continuing any action, in any manner or place, that does not comply or is inconsistent with the

14  provisions of this Order or other orders of this Court, or the agreements or actions contemplated or

15  taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any

16  license, permit or authorization to operate any of the Assets or conduct any of the businesses

17  operated with the Assets.

18      17.    The Purchaser shall not have any liability or other obligation of the Debtor arising

19  under or related to any of the Assets.

20      18.    The transactions contemplated by the APA are undertaken by the Purchaser without

21  collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code.  The

22  Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and,

23  as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

24      19.    Nothing contained in any plan of reorganization or liquidation, or order of any type

25  or kind entered in (a) this Chapter 11 Case, (b) any subsequent chapter 7 case into which any such

26  chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order,

27  shall conflict with or derogate from the provisions of the APA or the terms of this Order.

28      20.    The Debtor's non residential real property lease with The Crystals at CityCenter,

1    LLC having not been assumed or rejected within the first 120 days of this case is deemed rejected

2    pursuant to 11 U.S.C. §365(d)(4).

3         21.    Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be

4    effective immediately upon entry and the Debtor and the Purchaser are authorized to close the Sale

5    immediately upon entry of this Order.

6         22.    No bulk sales law or any similar law of any state or other jurisdiction applies in any

7    way to the Sale.

8         23.    The failure specifically to include any particular provision of the APA in this Order

9    shall not diminish or impair the effectiveness of such provision, it being the intent of this Court

10   that the APA be authorized and approved in its entirety.

11        24.    The APA and any related agreements, documents or other instruments may be

12   modified, amended or supplemented by the parties thereto and in accordance with the terms

13   thereof, without further order of this Court, provided that any such modification, amendment or

14   supplement does not have a material adverse effect on the Debtor's estate.

15        25.    This Court shall retain jurisdiction to, among other things, interpret, implement,

16   and enforce the terms and provisions of this Order and the APA, all amendments thereto and any

17   waivers and consents thereunder and each of the agreements executed in connection therewith to

18   which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to

19   adjudicate, if necessary, any and all disputes concerning or relating to the Sale or the affect of the

20   Sale.

21        26.    To the extent that this Order is inconsistent with any prior order or pleading with

22   respect to the Sale Motion in this Chapter 11 Case, the terms of this Order shall govern.

23        **IT IS SO ORDERED.**

24   Submitted by:

25   _____

26   Lenard E. Schwartzer, Esq.
     Schwartzer & McPherson Law Firm

27   2850 South Jones Blvd., Suite 1
     Las Vegas NV  89146

28   *Attorneys for Debtor and Debtor in Possession*

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

9

1  In accordance with LR 9021, counsel submitting this document certifies that the order accurately
2  reflects the court's ruling and that (check one):

3  _____  The court has waived the requirement set forth in LR 9021 (b)(1).

4  _____  No party appeared at the hearing or filed an objection to the motion.

5  _____  I have delivered a copy of this proposed order to all counsel who appeared at the hearing,
6          and any unrepresented parties who appeared at the hearing, and each has approved or
          disapproved the order, or failed to respond, as indicated above.

7  _____  I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order
8          with the motion pursuant to LR 9014(g), and that no party has objected to the form or
9          content of the order.

10 Submitted by:

11  /s/  Lenard E. Schwartzer
    Lenard E. Schwartzer, Esq.
12  Schwartzer & McPherson Law Firm
    *Proposed Attorneys for Debtor and*
13  *Debtor in Possession*

14                                                    # # #

SCHWARTZER & McPHERSON LAW FIRM
2850 South Jones Boulevard, Suite 1
Las Vegas, Nevada 89146-5308
Tel: (702) 228-7590 · Fax: (702) 892-0122

10

Debtor's Motion to Approve Management Agreement