**Entered on Docket
October 03, 2011**

_____
**Hon. Mike K. Nakagawa
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: ) | Case No. 11-10202-MKN |
| ) | |
| BESO, LLC, ) | Chapter 11 |
| ) | |
|               Debtor. ) | Date:  September 26, 2011 |
| ) | Time:  1:30 p.m. |
| _____ ) | |

**MEMORANDUM DECISION ON MOTION FOR ORDER (1) AUTHORIZING
PRIVATE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS
FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES,
AND OTHER INTERESTS; (2) APPROVING THE ASSET PURCHASE
AGREEMENT IN CONNECTION THEREWITH; AND (3)
GRANTING RELATED RELIEF[1]**

On September 26, 2011, a hearing was conducted on the Debtor's Motion for Order (1) Authorizing Private Sale of Substantially All of the Debtor's Assets Free and Clear of Any and All Liens, Claims, Encumbrances, And Other Interests; (2) Approving the Asset Purchase Agreement in Connection Therewith; and (3) Granting Related Relief ("Sale Motion"). Opposition was filed on behalf of Anthony Vicidomine ("Vicidomine") as well as Mali and Ronen Nachum ("Nachums"). The Crystals of Citycenter, LLC ("Crystals") filed a response in support of the motion. The

---

[1] In this Memorandum Decision, all references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. section 101 et seq. unless otherwise indicated. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure.

Case 11-10202-mkn    Doc 263    Entered 10/03/11 17:01:28    Page 2 of 19

appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

## BACKGROUND

Beso, LLC ("Beso") filed a voluntary Chapter 11 petition on January 6, 2011. At the time the case was commenced, Beso operated the Eve nightclub as well as the Beso restaurant from common space leased at The Crystals at Citycenter in Las Vegas, Nevada. Beso is a limited liability company that was formed in April 2009. According to Beso's Statement of Financial Affairs ("SOFA"), its members include Eva Longoria ("Longoria"), Jonas Lowrance ("Lowrance"), the Nachums, Vicidomine and John Torregiani. The relationship between Beso's members has been less than ideal.

The SOFA discloses a lawsuit pending in the Eighth Judicial District Court for Clark County, Nevada ("State Court") entitled <u>Ronen Nachum and Mali Nachum v. Beso, LLC, et al.</u>, denominated Case No. A-10-617919-C ("Nachum Action"). That lawsuit names as defendants Beso, Longoria, Lowrance, Falcon Security Group, and unidentified fictitious parties. It asserts causes of action on theories of civil conspiracy, breach of contract, breach of fiduciary duty, contractual and tortious breach of covenant of good faith and fair dealing, unjust enrichment, assault, false imprisonment, and declaratory relief. In a separate proceeding entitled <u>Beso, LLC v. Ronen Nachum</u>, Case No. 10PO-0793, Beso obtained a protective order from the Las Vegas Township Justice Court on August 27, 2010, to prevent Ronen Nachum from interfering with its business operations and to prohibit him from threatening Lowrance.[2] Prior to those two actions, it appears that Vicidomine also had sued Beso in State Court in a proceeding entitled <u>Anthony Vicidomine v. Beso, LLC</u>, denominated Case No. A-10-610309-C ("Vicidomine Action"). That lawsuit resulted in a settlement agreement whereby Vicidomine obtained a stipulated judgment

---

[2] A copy of that protective order was attached as Exhibit "A" to Beso's Opposition to Mali Nachum's Dismissal Motion discussed at 3, <u>infra</u>.

2

against Beso in the amount of $634,025, as well as a security interest in Beso's assets.[3] Vicidomine apparently used that judgment to garnish Beso's bank accounts and was threatening an additional garnishment immediately prior to the filing of the bankruptcy petition.

After the Chapter 11 petition was filed, Beso continued to operate Eve nightclub and Beso restaurant as debtor in possession. Shortly after the bankruptcy petition was filed, a motion to dismiss the Chapter 11 proceeding ("Dismissal Motion") was brought by Mali Nachum who asserted that the filing of the bankruptcy petition was not properly authorized by the members of Beso. On March 2, 2011, an order was entered denying the Dismissal Motion. On April 29, 2011, however, the court entered an order granting relief from stay to Mali Nachum so that she could proceed with the Nachum Action as against Lowrance and Longoria. On May 2, 2011, the court approved a settlement by which various mechanics lien claims were satisfied ("Lien Settlement Order").

On May 6, 2011, the exclusive period of time under Section 1121(b) for Beso to file a proposed Chapter 11 plan of reorganization ("Plan Exclusivity Period") was set to expire.[4] On the same date, the period of time under Section 365(d)(4) for Beso to assume or reject the Crystals lease ("Lease Assumption Period") also was set to expire.[5] Prior to the expiration of those deadlines, Beso filed a motion requesting an extension of the Plan Exclusivity Period. Opposition to that

---

[3] A copy of the settlement agreement ("Vicidomine Settlement Agreement") is attached as Exhibit "C" to the Declaration of William Braden in support of the Sale Motion. Under Part 2.k. and 2.l. of that agreement, Vicidomine's lien and security interest is subordinated to the security interests previously granted to Crystals and Longoria. The parties do not dispute that Crystals has a security interest against all of the assets of Beso to secure payments under the premises lease and that Longoria also has a security interest, junior to Crystal's, that secures her loans to or payments on behalf of Beso exceeding $1.4 million.

[4] Under Section 1121(b), the debtor in possession alone has a period of 120 days after the Chapter 11 petition is filed to file a proposed plan of reorganization. Under Section 1121(d), that exclusive period may be extended or reduced for cause shown.

[5] Under Section 365(d)(4)(A), a debtor in possession must assume an unexpired lease of nonresidential real property no later than 120 days after the bankruptcy petition is filed. Because Beso filed its petition on January 6, 2011, the 120th day thereafter fell on May 6, 2011.

3

motion was filed by Vicidomine who filed a declaration ("Vicidomine Declaration") attesting that he was in the process of formulating a plan of reorganization that he anticipated filing after the expiration of the Plan Exclusivity Period. Beso's motion was heard and granted at a hearing on May 18, 2011, and the court entered an order extending the Plan Exclusivity Period from May 6, 2011 to June 24, 2011.

No motion to extend the Lease Assumption Period was filed by Beso or by Crystals.[6] Because Beso has never assumed the Crystals lease and has never confirmed a plan before expiration of the Lease Assumption Period, the lease is deemed rejected and Beso is required to surrender the premises to Crystals pursuant to Section 365(d)(4)(A).[7] After May 6, 2011, Beso has remained in the premises only because Crystals has permitted it to do so. Continued operation of the Eve nightclub and Beso restaurant therefore has been on a month-to-month tenancy. There is no apparent dispute that Crystals is owed more than $1.3 million in postpetition rent that would be entitled to administrative priority under Section 503.

On July 18, 2011, an order was entered denying the Nachums' request for an order shortening time to hear a motion requesting the appointment of a Chapter 11 trustee pursuant to Section 1104. The motion was brought, in part, because Eve nightclub had recently closed. In response to the request for order shortening time, Crystals filed written opposition that confirmed its support of the Beso's efforts to reorganize and its belief that a proposed plan of reorganization was forthcoming.[8] Opposition also was filed by Beso confirming that the Eve nightclub had temporarily

---

[6] Under Section 365(d)(4)(B), the period to assume or reject an unexpired lease of nonresidential real property may be extended by the court on a motion brought by the debtor in possession or the lessor.

[7] Subject to Section 502(b)(6), Crystals also may submit a claim for its lease rejection damages.

[8] Crystals also indicated that it was not waiving any right to compel Beso to make all postpetition lease payments under Section 365(d)(3) or to comply with the assumption deadline under Section 365(d)(4).

4

closed but that Beso restaurant had been kept open with positive cash flow.[9] The request for an order shortening time was denied without prejudice to the Nachums refiling the motion on regular notice to all parties.

On July 27, 2011, an operating report for the period ending June 30, 2011, was filed by Beso. The report indicates that the Beso's operating losses during the case were $669,350 as of the end of that month, of which $394,020 of the losses were incurred in the month of June.

On August 9, 2011, Beso filed a motion to approve a certain Management Agreement ("Management Agreement") with CHLN, Inc., a Delaware corporation ("CHLN").[10] CHLN, in anticipation of bankruptcy court approval of the Management Agreement, started managing Beso's business operations on August 8, 2011. Under the Management Agreement, CHLN would supervise Beso's ordinary course of business operations, including payment of employees and other costs, and would maintain books and records. It would also advance or loan any necessary funds to maintain operations until the business could be sold. Any funds advanced would be subject to repayment by Beso as an allowed administrative expense. As compensation for the management services provided under the Agreement, CHLN would receive a fee equal to all revenues, net of the ordinary business expenses.[11] In addition to the fee, CHLN, or its designee, would be allowed to purchase the business operations in a "private sale" transaction pursuant to FRBP 6004(f)(1).[12] In the event CHLN is not approved as a purchaser, then CHLN would have an administrative claim in the bankruptcy estate for all operating losses and all expenses incurred under the Management

---

[9] Even after the nightclub closed, Beso apparently still has between 50 and 60 employees.

[10] The motion ("Management Motion") was accompanied by the supporting Declaration of William M. Braden ("Braden Declaration I").

[11] At the initial hearing on the Management Motion, CHLN agreed to waive this provision.

[12] CHLN offered to purchase Beso's assets for $1 million plus the amount of funds it advances for operations. See Braden Declaration I at ¶ 9.

5

Agreement.[13]

Opposition to the Management Motion was filed by the Nachums, Vicidomine and the Nevada Department of Taxation ("NDOT").[14] No other interested party objected[15] and Crystals supported the relief requested. All objecting parties argued that Beso was moving too quickly to approve an agreement that cedes control of the business operations to CHLN. Both of Beso's minority members, i.e., the Nachums and Vicidomine, have been active in the case, but neither had filed a proposed plan of reorganization.[16]

The Management Motion was heard on August 16, 2011, and a memorandum decision overruling the objections was entered on August 17, 2011. An interim order granting the Management Motion was entered on August 25, 2011 ("Interim Management Order"), and a final hearing on the Management Motion was scheduled for September 26, 2011. The interim order permitted Beso to borrow up to $300,000 from CHLN to meet operating expenses until the business could be sold. It also required that any proposed sale of the business operations to CHLN be separately noticed for a hearing before the court. The order also required that any party "who wishes to acquire the same assets must submit a proposed offer to the Debtor and to Crystals no later than five business days before the sale approval hearing along with proof of financing

---

[13] The proposed Management Agreement did not confer an administrative expense priority to CHLN ahead of any other administrative claimants, nor did it propose a "breakup fee" to CHLN in the event that the business is not sold to CHLN.

[14] NDOT filed a proof of claim against Beso for unpaid sales taxes in the amount of $539,318.45 on March 24, 2011. The attachment to that proof of claim indicates that most of the tax liability is based on an audit for the prepetition tax period ending December 31, 2010. The priority amount of the claim is $491,753.74, but effectively is subordinated to the Crystals' secured and administrative claims.

[15] No creditors committee has been appointed in the case and the Office of the United States Trustee has not appeared in the proceeding.

[16] The Management Motion was filed by Beso on August 9, 2011, and the Plan Exclusivity Period expired on June 24, 2011. Thus, a total of 46 days, i.e., more than 6 weeks, had elapsed between the expiration of the Plan Exclusivity Period and the filing of the Management Motion.

available to complete the purchase..." Interim Management Order at 3:4-6.

On August 26, 2011, Beso filed the Sale Motion. A copy of a proposed Asset Purchase Agreement is attached as Exhibit "A" to the motion and a copy of a proposed order granting the motion is attached as Exhibit "D" ("Proposed Sale Order"). The Sale Motion is accompanied by an additional Declaration of William Braden ("Braden Declaration II"), to which is attached as Exhibit "B" an Indemnity Agreement between CHLN and Longoria ("Longoria Indemnity Agreement").[17] The motion also is accompanied by the Declaration of Steve L. Scheinthal ("Scheinthal Declaration"), who is the executive vice president and general counsel for Landry's, Inc. as well as vice president of CHLN. Landry's is the parent of CHLN.[18] Crystals filed a response that supports the Sale Motion. Crystals' response is accompanied by the Declaration of Bruce Aguilera ("Aguilera Declaration"), who is senior vice president and general counsel to Crystals.

The sale contemplates that substantially all of Beso's assets will be sold to CHLN, free and clear of any liens or interests, for the amount of $1,000,000. From the purchase price, up to $300,000 will be delivered to Crystals to reduce its post-petition administrative rent claim. Up to $491,754 will be remitted to the NDOT in full satisfaction of its priority claim for unpaid sales taxes. The balance of the purchase price, estimated to be approximately $208,000, will be retained

---

[17] At the hearing on the Sale Motion, Beso's counsel represented that CHLN's obligation under the Longoria Indemnity Agreement had been reduced from $500,000 to $475,000 and that a similar agreement with a limit of $50,000 had been entered between CHLN and Lowrance ("Lowrance Indemnity Agreement"). As to Lowrance, counsel indicated that any payments made by CHLN under the Lowrance Indemnity Agreement would not result in CHLN receiving any portion of Lowrance's interest in the new entity. In contrast, Paragraph 2 of the Longoria Indemnity Agreement allows CHLN to receive a portion of Longoria's interest in the new entity commensurate with the indemnity payments made by CHLN. In no event, however, would Longoria's interest in the new entity be less than ten percent. It also appears from the Longoria Indemnity Agreement, that Longoria (and perhaps others) also were sued by Mali Nachum in yet another proceeding entitled Mali Nachum v. Eva Longoria Parker, Case No. BC452782, pending in the Superior Court for the State of California, in and for the County of Los Angeles.

[18] On August 26, 2011, Beso filed a certificate of service indicating that the Sale Motion and supporting documents had been served on all creditors and parties in interest.

by the Beso bankruptcy estate. While CHLN is identified as the purchaser, it is contemplated that CHLN, Longoria and Lowrance will form a new entity ("Newco") that will be authorized by CHLN to use the assets purchased from Beso. The new entity will be owned fifty percent (50%) by CHLN, thirty percent (30%) by Longoria, and twenty percent (20%) by Lowrance. A new lease will be entered into with Crystals for Newco to operate from the same location. Inasmuch as the promotion of the business apparently is based on Longoria's celebrity status, Longoria will enter into an "appearance agreement" with Newco that will obligate her to make personal appearances at the Eve nightclub and Beso restaurant.[19] Additionally, CHLN will enter into an agreement to indemnify and hold Longoria harmless from any and all reasonable attorney's fees and costs related to various litigation up to a certain dollar amount, and also to indemnify and hold Longoria harmless from any damages or monetary judgments awarded against her in the same litigation.[20]

Opposition to the Sale Motion was filed by the Nachums ("Nachum Opposition"), which is accompanied by the Declaration of Brooke A. Bohlke ("Bohlke Declaration") and the Declaration of Mali Nachum ("Mali Declaration"). Mali Nachum filed a supplement to that opposition as well. Opposition to the Sale Motion also was filed by Vicidomine ("Vicidomine Opposition"), which joins in the opposition filed by the Nachums and which also incorporates by reference Vicidomine's prior opposition to the Management Motion. The latter opposition

---

[19] At the sale approval hearing, counsel for Beso explained that it is necessary to include Lowrance as a member of the new entity because he controls the right to use the Beso name. No one at the hearing disputed this explanation even though it had not been given at any prior proceeding in the case. Curiously, however, Vicidomine previously represented that he is the managing member of The Jet Group, LLC, which is a "federally registered owner of the Beso trademark". See Vicidomine Management Opposition at 5:5-8. It is not clear whether Vicidomine is referring to such a trademark with respect to a Beso restaurant that is located in Hollywood, California.

[20] CHLN indicates that it will purchase the assets only if Longoria and Lowrance are part of the new entity, see Scheinthal Declaration at ¶ 5, and Crystals indicates that Longoria's continued involvement in the business operations is very important to its negotiation of a new lease with CHLN. See Aguilera Declaration at ¶ 4. The continued involvement of any other current member of Beso is not mentioned by either CHLN or Crystals as being important to future operations.

("Vicidomine Management Opposition") was accompanied by the Vicidomine Declaration. A combined hearing on final approval of the Management Motion as well as the Sale Motion was held on September 26, 2011, consistent with the Interim Management Order. The appearances of counsel were noted on the record.

At the hearing, counsel for Beso and CHLN clarified that CHLN's obligation under the Longoria Indemnity Agreement has been reduced to $475,000 and that a similar agreement in a lesser amount had been reached with Lowrance. See note 17, supra. They further indicated that the failure of a sale order being entered by September 28, 2011, would not be considered an event of termination under Section 6.1(a) of the Asset Purchase Agreement.[21] Counsel for CHLN also represented that the assets acquired by CHLN from Beso under the Asset Purchase Agreement would not include any derivative claims held by Beso such as breach of fiduciary duty or directors and officers liability claims, nor any rights, claims or causes of action arising under the Bankruptcy Code for the benefit of Beso or Beso's bankruptcy estate. At the conclusion of the hearing, both matters were taken under submission.

**DISCUSSION**

Section 363(b) permits a Chapter 11 debtor in possession to sell its property outside the ordinary course of business after notice and a hearing. Section 363(f) permits the property to be sold free and clear of any other entity's lien or interest if at least one of five different conditions exist. Those conditions are as follows: (1) applicable nonbankruptcy law permits sale of the property free and clear of such interests, (2) the other entity consents, (3) the other entity's interest is a lien and the price at which the property is sold is greater than the aggregate value of all such liens on the property, (4) the entity's interest is in bona fide dispute, or (5) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest.

Beso's secured creditor Schedule "D" lists no creditors having claims secured by a lien

---

[21] The court had indicated that a memorandum decision on the Sale Motion would be entered no later than October 3, 2011.

against the assets of the bankruptcy estate. The claims register maintained by the clerk reflects that 25 proofs of claims have been filed, with the only secured claims being filed by Bombard Electric, Bombard Mechanical, Royal Metal Works, Siemens Industries, Crystals, and Long Building Technologies. Except for Crystals, all of these secured proofs of claim assert mechanics liens against the business premises. According to the Sale Motion, the known liens of record, based on UCC-1 Financing Statements being filed, are held by Sysco Las Vegas, Inc., Sysco Newport Meat Company, Vicidomine, Crystals, and Longoria. See Sale Motion at 10:10-20.

Beso maintains that all of the mechanics liens have been satisfied pursuant to the Lien Settlement Order, see Braden Declaration II at ¶ 19, and that the consensual liens of Sysco Las Vegas and Sysco Newport Meat previously were satisfied by payment in full. Id. If Beso is correct that all of those mechanics and consensual liens have been satisfied, only the liens of Vicidomine, Crystals and Longoria must be addressed by the proposed sale.

The liens of Crystals and Longoria, see discussion at note 3, supra, will not be satisfied by the proposed sale but both parties consent. The requirements of Section 363(f)(2) therefore is met with respect to Crystals and Longoria. As to Vicidomine, Beso argues that his claim is subject to bona fide dispute under Section 363(f)(4) because the lien created by the Vicidomine Settlement Agreement was designed to secure payment of an antecedent debt owed to an insider. See Sale Motion at 11:9-17. Because the creation of a lien is a transfer within the meaning of Section 101(54)(A) and Vicidomine may be an insider of Beso within the meaning of Section 101(31), Beso maintains that Vicidomine's lien may be avoided as a preferential transfer under Section 547.[22] Additionally, Beso argues that Vicidomine's claim actually is unsecured because there is no value

---

[22] The Vicidomine Settlement Agreement was executed on May 4, 2010. The bankruptcy was commenced on January 6, 2011. Section 547 allows a trustee or debtor in possession to avoid a transfer of an interest in property of a debtor to an insider on account of an antecedent debt if the transfer occurs within one year of the filing of the bankruptcy case and if it permits the insider to recover more on its prebankruptcy claim than if it did not occur and the insider received a distribution in a Chapter 7 liquidation. 11 U.S.C. § 547(b).

in the assets after the interests of Crystals and Longoria are taken into account, see Sale Motion at 10:23 to 11:8, and that Vicidomine's secured claim would be subordinated under Section 510(b). Finally, Beso maintains that Vicidomine's claim would be disallowed under Section 502(d) because Vicidomine has not returned the transfer that is avoidable under Section 547. Id. at 11:24 to 12:2.

Vicidomine's written response to the Sale Motion does not take issue with Beso characterization of his claim as being subject to bona fide dispute. Instead, as mentioned above, he adopts the arguments raised by the Nachums and also incorporates by reference his opposition to the Management Motion. See Vicidomine Opposition at 2:4-23. Vicidomine reiterates his argument that a sale of substantially all of Beso's assets is the equivalent of a "sub rosa" plan of reorganization and that the sale reflects impermissible "self dealing" in favor of Longoria and Lowrance to the detriment of Beso's other members. Vicidomine also argues that the sale should be subject to an open auction approved by the court.[23]

For their part, the Nachums also argue that the sale benefits Longoria rather than the estate and that it encompasses certain personal property belonging to them, including certain artwork, tools and childhood videos. See Nachum Opposition at 2:26 to 2:2 and Mali Declaration at ¶¶ 2 and 3. As to the former argument, the Nachums object that the sale would encompass claims that the Beso bankruptcy estate holds against Longoria, Braden and others for breach of fiduciary duty, including those based on "self-dealing." See Nachum Opposition at 5:17-21.[24]

With minor exceptions, the court considered and rejected the same objections in connection with the Management Motion. None of the objections, however, address the proverbial

---

[23] See Vicidomine Management Opposition at 9:9 to 10:28 and 8:7 to 9:8. He also argues that Beso failed to comply with the Interim Management Order because it never filed bi-weekly reports of any funds advanced by CHLN to cover business operations. See Vicidomine Opposition at 2:16-20.

[24] The Bohlke Declaration in support of the Nachums' opposition refers to deposition testimony from Longoria wherein she expressed a desire for protection from the various lawsuits initiated by the Nachums. As previously noted at 17, supra, CHLN has agreed to indemnify Longoria with respect to the legal expenses and any judgments resulting from the Nachums' claims in conjunction with Longoria's appearance agreement.

11

elephant in the courtroom: Crystals' ability to demand Beso's immediate surrender of the premises pursuant to Section 365(d)(4).[25]  As previously noted, Beso's lease of the premises was deemed rejected as of May 6, 2011, because Beso never assumed it and did not obtain an extension of time to do so.  See discussion at 4, supra.  It is important to Crystals that Longoria remain involved in the operations of the nightclub and restaurant in order for Crystals to be willing to negotiate a new lease of the premises.[26]  See note 20, supra.  It is essential to CHLN that Longoria and Lowrance be part of any new entity formed to operate the business.  Id.  To ensure Longoria's presence, she will be obligated under an agreement to appear at the business at certain times.  See discussion at 8, supra.  The bottom line is that the nightclub and restaurant will be closed at Crystals' insistence unless a proposal acceptable to Crystals is made.

After June 24, 2011, any party in interest, including the Nachums and Vicidomine, could have proposed a Chapter 11 plan of reorganization, but none have.  After entry of the Interim Management Order, any party in interest, including the Nachums and Vicidomine, could have submitted a better offer to Beso and Crystals to acquire the same assets, but none have.  As of the

---

[25] "...an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, **and the [debtor in possession] shall immediately surrender that nonresidential real property to the lessor**, if the [debtor in possession] does not assume or reject the unexpired lease **by the earlier of** - (i) the date that is **120 days after the date of the order for relief**; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. § 365(d)(4) (emphasis added).

[26] Prior to the initial hearing on the Management Motion, Vicidomine made a proposal to Crystals in a letter dated August 12, 2011.  That proposal entailed a renegotiation of the Crystals lease and a plan of reorganization where Vicidomine would partner with Angel Management Group to manage, market, renovate, and operate the nightclub and restaurant, with the goal of paying other general unsecured creditors.  If the arrangement was approved, Vicidomine would subordinate his unsecured claim.  See Vicidomine Declaration at ¶¶ 3, 4 and 5. Vicidomine's proposal, of course, was entirely dependent on the willingness of Crystals to negotiate a deal with an existing, minority member of Beso.  Curiously, the proposal contemplated only Vicidomine retaining an interest in the business, yet he characterizes the current proposal as the product of self-dealing by Longoria, Lowrance and Braden.  Vicidomine's proposal did not include Longoria and as a result, Crystals apparently was not interested.  Given that Longoria is the only marketable celebrity having an existing and vested interest in the success of Eve nightclub and Beso restaurant, it is hardly surprising that she is important to Crystals and CHLN, but the Nachums and Vicidomine are not.

date of the hearing on the Sale Motion, more than three months had passed since the Plan Exclusivity Period expired and none of Beso's other members have offered a proposal that would address Crystals' apparent desire to maintain a celebrity presence for the nightclub and restaurant.[27]

Within this context, the objections raised by the Nachums and Vicidomine are no doubt serious, but ultimately unpersuasive.

### I.    The Nachums' Objections.

At the hearing on the Sale Motion, counsel for Beso indicated that any personal property owned by the Nachums, rather than the bankruptcy estate, is not encompassed by the Asset Purchase Agreement. Once located and demonstrated to be the Nachums' personal property, those items will be returned to them.

As to any claims that the Beso estate may have against Longoria or any other party, whether described as impermissible "self-dealing" or couched as claims for breach of fiduciary duty, the Asset Purchase Agreement was amended at the hearing to exclude any such claims as well as any claims arising under the Bankruptcy Code. See discussion at 9, supra.

### II.    Vicidomine's Objections.

A sale of substantially all of the assets of a Chapter 11 debtor in possession is permissible without the protections of the plan confirmation process if there is a valid business reason for the sale. See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2nd Cir. 1983). In assessing whether a sufficient business reason exists to sell a Chapter 11 debtor's assets before a plan can be confirmed, courts may consider "...most importantly, perhaps, whether the asset is increasing or decreasing in value...." 722 F.2d at 1071.

---

[27] Whether Vicidomine could have secured a celebrity comparable to Longoria to market the operations is unknown. It also is unknown whether Vicidomine could have persuaded Crystals that a promotional scheme based on individual celebrity carries too much risk in an increasingly competitive and fluctuating market. These unknowns, however, do not detract from the undisputed circumstances that Crystals owns the premises, is legally entitled to possession, and wants Longoria to be present.

13

Other factors that may be considered including the value of the assets being sold compared to the bankruptcy estate as a whole, the amount of time that has elapsed since the bankruptcy case was filed, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed sale on the disposition of future plans of reorganization, the proceeds to be obtained from the proposed sale compared to any appraisals of the property, and the nature of the disposition of the assets. Id.

Vicidomine characterizes the Sale Motion as resulting in the equivalent of a "sub rosa" plan[28] but offers no solution to Crystals' exercise of its right to immediate possession. There is no dispute that the physical assets encompassed by the Asset Purchase Agreement are encumbered at least by the liens of both Crystals and Longoria. No leasehold interest is being sold inasmuch as the Crystals lease has been rejected. Beso's possessory interest in the nightclub and restaurant premises continues to exist only so long as Crystals remains patient. Nearly nine months have elapsed since the Chapter 11 proceeding was commenced and more than three months have elapsed since the Plan Exclusivity Period ended. The likelihood of a plan being proposed and confirmed that encompasses a nightclub and restaurant operation at Crystals by this debtor in possession is virtually if not literally nonexistent.[29] Under these circumstances, the court concludes that a sale of substantially

---

[28] The phrase "sub rosa plan" is a label typically applied when a court concludes that a sale of substantially all of the assets of a Chapter 11 debtor should not be permitted. The label has no meaning separate from a determination made upon application of the appropriate factors.

[29] Apparently, Beso opened for business in late December 2009. By February 2010, Beso had been sued by Vicidomine. See discussion at 2-3. By June 2010, the Nachums had sued Beso, Longoria, Lowrance and others for civil conspiracy, breach of fiduciary duty, assault, false imprisonment, etc. See discussion at 2. By August 2010, Beso obtained a protective order against Ronen Nachum barring him from the premises and prohibiting him from threatening Lowrance. Id. In less than one year, a relationship begun as symbiotic had literally deteriorated into the chaotic and is now toxic. Under these circumstances, the prospect of the Beso members collectively attracting other participants to reorganize Beso's affairs seems most unlikely.

all of Beso's assets outside of a proposed plan is reasonable and appropriate.[30]

Vicidomine's additional characterization of the sale as "self-dealing" is largely undercut by the opportunity he has had to offer a superior proposal to Beso and Crystals. Simply put, he has offered no deal that would be acceptable to Crystals. That the participation of Longoria and Lowrance is essential to CHLN's willingness to purchase the assets is not fatal to a sale of assets under Section 363(b). Compare In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 842 (Bankr.C.D.Cal. 1991) (proposed sale of assets to an insider must disclose the relationship between the parties, the circumstances of the negotiation, the efforts to otherwise market the assets, and the factual basis for the determination of the reasonableness of the price). In this instance, the relationship between the parties has been disclosed and no one contests that Beso previously attempted to locate investors or potential partners in addition to CHLN. See Braden Declaration II at ¶ 4. No one disputes that neither Vicidomine or the Nachums have made a purchase offer acceptable to Crystals. No one disputes that Beso negotiated an agreement for Crystals to accept $300,000 as a portion of the payment of its postpetition administrative rent claim and to subordinate the balance of its administrative and secured claims to the payment of NDOT's sales tax claim. Id. at ¶ 5. Thus, even though Longoria and Lowrance will be involved with the new entity formed to use the assets after the purchase by CHLN, such an arrangement is not proscribed by Section 363(b). Compare In re Motors Liquidation Co., 430 B.R. 65, 86 (S.D.N.Y. 2010) (post-sale

---

[30] At the hearing, Vicidomine's counsel argued that sales under Section 363 are essentially designed to "protect a melting ice berg" rather than benefitting merely insiders of a Chapter 11 debtor in possession. Presumably, counsel's reference is to an asset that is declining in value during the course of the bankruptcy case. In this instance, Beso's interest in the business as a going concern will have no value at all once Crystals exercises its rights under Section 365(d)(4). These rights may be exercised irrespective of whether CHLN has been required to advance funds to Beso pursuant to the Interim Management Order. At that point, the business will close, the employees will be terminated, and nonpriority unsecured claimants will have virtually no hope of recovery on their claims. Preservation of employment and payment of creditors are two policies intended to be advanced by the reorganization process, in addition to protection of the interests of equity security holders. Sale of the assets to CHLN as a going concern helps achieve at least one of these fundamental bankruptcy policies and may facilitate the others as well.

allocation of ownership interests in new entity based on third-party contributions is not prohibited by Section 363).

Additionally, as modified and clarified at the hearing on the Sale Motion, the assets sold to CHLN will not include any derivative, directors and officers liability, breach of fiduciary duty, or similar actions that Beso may have against any of its members or officers. See discussion at 9, supra. The sale also will not include any avoidance or other actions arising under the Bankruptcy Code, including any preference claims under Section 547 that Beso might have against Vicidomine. See discussion at 10 and n. 22, supra. While Longoria and Lowrance may have an interest in the new entity after the sale is concluded, the sale does not eliminate any viable claims that the bankruptcy estate may have against them. The interests of Beso's creditors and its other members are not prejudiced under these circumstances.[31]

For the same reason, the court rejects Vicidomine's contention that a "public auction" rather than a "private sale" is required. The Interim Management Order provided any interested party an opportunity to make a competing proposal to purchase the same assets. There was no order prohibiting any party from contacting Beso or Crystals to discuss the parameters of an acceptable alternative offer. Yet there is no evidence of record that any party made such an offer, not even Vicidomine.[32] As previously mentioned, see discussion at 15, supra, no one disputes that Beso

---

[31] At the sale approval hearing, Vicidomine's counsel argued at length that the sale of such claims would strip the estate of the only valuable assets available to Beso's other members and other creditors of the estate. After counsel's argument, counsel for CHLN clarified that such claims are not encompassed by the Asset Purchase Agreement. This clarification must be included in any order approving the proposed sale.

[32] At the sale approval hearing, Vicidomine argued that the ability to make a separate offer was largely illusory because Crystals effectively could block any efforts that did not include Longoria or for any other reason. Counsel suggested that the underlying principles behind permitting asset sales under Section 363(b) are nullified if Crystals is permitted to have such an influence on the outcome of the case. While mildly persuasive, the same argument ignores the policy behind Section 365(d)(4) which requires that the interests of commercial real property landlords be protected from dilatory conduct by a trustee or debtor in possession. If Crystals was forced to negotiate with Vicidomine or otherwise was prohibited from making an independent business decision, the principles behind Section

endeavored to find other investors or partners but only CHLN has stepped up to the table. There is no basis on which to conclude that a public auction process is required or would result in a superior offer. More important, no one has suggested that a public auction and a sale could be concluded without the cooperation of Crystals.

### III. CHLN as a Good Faith Purchaser.

The Proposed Sale Order includes a finding under Section 363(m) that CHLN is a good faith purchaser of the subject assets. While the Nachums and Vicidomine have alleged self-dealing on the part of Longoria, Lowrance and Braden, neither of them has challenged the good faith of CHLN in offering to purchase the assets. No one has questioned that CHLN approached Beso about the transaction after Beso contacted it and others in an attempt to locate a partner or investor. See Braden Declaration II at ¶ 4. No one has disputed that Crystals wants Longoria to be involved in any continued operation from the premises and any new lease is contingent upon the sale of assets to CHLN. See Aguilera Declaration at ¶¶ 4 and 5. No one disputes that CHLN has tailored its approach based on Crystals' requirements and that CHLN intends to continue operations at the same premises. See Scheinthal Declaration at ¶¶ 5, 6 and 7.

The terms of the sale have been disclosed in the Asset Purchase Agreement as well as the indemnity agreements with Longoria and Lowrance. The existence of the appearance agreement with Longoria also has been disclosed. At the sale approval hearing, CHLN modified the terms of the Asset Purchase Agreement to exclude from the purchase derivative, directors and officers liability, breach of fiduciary duty, or similar actions that Beso may have against any of its members or officers. In connection with the Management Agreement, CHLN also withdrew or limited any management fees it could recover. See discussion at 5 and note 11, supra.

Under all of the foregoing circumstances, the court concludes that CHLN is a good faith purchaser of Beso's assets under Section 363(m).

---

365(d)(4) also would be nullified. The court is not aware of any policy reason why the rights of parties under Section 363 take precedence over the rights of landlords under Section 365.

### IV. Waiver of FRBP 6004(h).

The Proposed Sale Order as well as the Sale Motion includes a waiver of FRBP 6004(h) which provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Beso has disclosed CHLN's intention to close the sale on the business day after entry of any order approving the sale rather than awaiting passage of the 14-day period.  See Sale Motion at 14:3-4 and Braden Declaration II at ¶ 24.  The proposed sale transaction itself provides for a waiver of FRBP 6004(h) to be obtained.  See Asset Purchase Agreement at 4.1(a) and 5.1.3.  Neither the Nachums or Vicidomine have objected to the proposed waiver, nor have any other parties in interest.

Because proper notice of the request has been given, no objection has been made, and a delay in closing will accrue additional administrative rent to Crystals, the court will grant a waiver of this provision.

### CONCLUSION

Based on the foregoing, the court concludes that the proposed sale of assets to CHLN free and clear of liens is appropriate under Section 363(f).  The Asset Purchase Agreement is modified to exclude from the purchase any derivative, directors and officers liability, breach of fiduciary duty, or similar actions that Beso may have against any of its members or officers.  This modification is in addition to the existing exclusion under the Asset Purchase Agreement of any rights, claims or causes of action arising under the Bankruptcy Code.  CHLN is determined to be a good faith purchaser within the meaning of Section 363(m) and the 14-day stay under FRBP 6004(h) is waived.

Counsel for Beso is directed to submit an order consistent with and incorporating by reference this Memorandum Decision.  Compliance with Local Rule 9021 is required.

Counsel for Beso is further directed to submit a separate order granting final approval of the Management Motion, incorporating by reference this Memorandum Decision.

Copies noticed through ECF to:

    NILE LEATHAM nleatham@klnevada.com, ckishi@klnevada.com;bankruptcy@klnevada.com

    LENARD E. SCHWARTZER bkfilings@s-mlaw.com

    U.S. TRUSTEE - LV - 11 USTPRegion17.lv.ecf@usdoj.gov

    MATTHEW Q. CALLISTER mqc@call-law.com, pjc@call-law.com;bab@call-law.com

    BART K. LARSEN blarsen@klnevada.com, jierien@klnevada.com;bankruptcy@klnevada.com

    BROOKE A. BOHLKE bab@call-law.com

    GREGORY E GARMAN bankruptcynotices@gordonsilver.com, bknotices@gordonsilver.com

    JAMES D. GREENE jgreene@greeneinfusolaw.com, fritchie@greeneinfusolaw.com;kfarney@greeneinfusolaw.com;bschmidt@greeneinfusolaw.com;cwalton@greeneinfusolaw.com

    ALYCIA K HANSEN ahansen@ag.nv.gov, mmillam@ag.nv.gov;dwright2@ag.nv.gov

    BRIAN D. SHAPIRO bshapiro@brianshapirolaw.com, ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice@brianshapirolaw.com

and sent to BNC to:

    All parties on BNC mailing list

and sent via REGULAR MAIL to:

Adam Friedman, Esq.
Olshan Grundman Frome Rosenweig & Wolosky
Park Avenue Tower
65 East 55th Street
New York, New York 10022

Timothy S. Cory, Esq.
8831 W. Sahara Ave.
Las Vegas, NV 89117

                                                             # # #